## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **NATIONAL PARKS CONSERVATION ASSOCIATION**, 777 6th Street NW, Suite 700, Washington, DC 20001, <br><br> **DC PRESERVATION LEAGUE**, 1328 Florida Avenue NW, 2nd Floor, Washington, DC 20009, <br><br> **NATIONAL MALL COALITION**, P.O. Box 4709, Rockville, MD 20849, <br><br> **OLMSTED NETWORK**, 1763 Columbia Road NW, Suite 175, Washington, DC 20009, <br><br> **THE COMMITTEE OF 100 ON THE FEDERAL CITY**, 945 G Street NW, Washington, DC 20001, <br><br> **THE CULTURAL LANDSCAPE FOUNDATION**, 1711 Connecticut Avenue NW, Suite 200, Washington, DC 20009, <br><br> **STEVE LONGENECKER**,* <br><br>      *Plaintiffs*, <br><br> *v.* <br><br> **DOUG BURGUM, in his official capacity as Secretary of the Interior**, 1849 C Street NW, Washington, DC 20240, <br><br> **UNITED STATES DEPARTMENT OF THE INTERIOR**, 1849 C Street NW, Washington, DC 20240, <br><br> **JESSICA BOWRON, in her official capacity as "Comptroller Exercising the Delegated Authority of the Director" of the National Park Service**, 1849 C Street NW, Washington, DC 20240, <br><br> **NATIONAL PARK SERVICE**, 1849 C Street NW, Washington, DC 20240, <br><br>      *Defendants*. | **Case No. 26-cv-_____** <br><br> **COMPLAINT** |

---

\* Address filed under seal pursuant to Local Civil Rule 5.1(c)(1).

**INTRODUCTION**

1. West Potomac Park is a recreational haven for thousands of D.C. residents. In 1897, Congress mandated that the land "be forever held and used as a park for the recreation and pleasure of the people." More than a century later, on any given day, the park might be hosting friendly games of softball, soccer, ultimate frisbee, kickball, rugby, or even its annual polo match. The park is also a frequent home for runners, walkers, bicyclists, picnickers, other informal recreation, and public events.

2. West Potomac Park has been listed on the National Register of Historic Places as part of the East and West Potomac Parks Historic District since 1973. It sits on the National Mall and is home to some of the capital's most prominent landmarks, including the Korean War Veterans Memorial, the Franklin Delano Roosevelt Memorial, and the Martin Luther King, Jr. Memorial. Nestled alongside these monuments and the Potomac River, the park's open fields provide a scenic landscape for recreation and reflection.

3. President Trump and his administration have taken a dimmer view of West Potomac Park. With no regard for its recreational and historic features, President Trump has characterized the park as "a totally BARREN field of Prime Waterfront Real Estate." According to the President, his administration has committed to "transforming" the park into a massive sculpture garden as part of the upcoming 250th anniversary celebrations.

4. Under the "West Potomac Plan," which Defendants adopted no later than May 15, 2026, Defendants have decided to construct a "National Garden of American Heroes" in West Potomac Park, featuring 250 statues—each at least eight feet tall—set among formal gardens, reflecting pools, plazas, dining facilities, and an amphitheater, all of which will displace the park's existing open spaces and recreational fields. One of the President's top fundraisers has already begun

1

soliciting donations, sharing renderings that illustrate how this garden complex will replace the current park.

5. The West Potomac Plan is unlawful.  Congress has made clear that the National Mall is a "substantially completed work of civic art"—not a personal sandbox for each President to renovate however he likes.  To that end, Congress has decreed that no new "commemorative work" shall be located within "the great cross-axis of the Mall," an area that includes West Potomac Park.

6. In defiance of that plain congressional command, Defendants have adopted and begun implementing the West Potomac Plan.  In doing so, Defendants have failed to comply with several statutes governing a project of this magnitude, including the Commemorative Works Act (CWA); 40 U.S.C. § 8106; the National Historic Preservation Act (NHPA); the National Environmental Policy Act (NEPA); the National Park Service Organic Act of 1916; and the Act of March 3, 1897, that established the park.

7. This disregard for legal requirements is part of the same playbook the administration has used to pursue other recent vanity projects.  For more than a year, President Trump has endeavored to take over public spaces for himself and remake our nation's capital in his own image, including by demolishing the historic East Wing of the White House; paving over the Rose Garden; and unlawfully emblazoning his name on the John F. Kennedy Center for the Performing Arts (until ordered otherwise by a court).  At every turn, the President and his administration have shirked congressionally required procedures, cut the public and groups with relevant expertise out of their renovation plans, and obfuscated the source of funding for these projects.

8. Plaintiffs are a coalition of preservation and cultural heritage organizations—all committed to protecting and preserving open spaces, national park sites, the National Mall, and

the District of Columbia—and a D.C. resident who has regularly participated in recreational activities in West Potomac Park for more than a decade.  The West Potomac Plan poses a grave threat to the historic, aesthetic, recreational, and other interests Plaintiffs and their members have in West Potomac Park.  And Defendants' failure to initiate the consultation and review processes required by law has deprived Plaintiffs of information and the ability to participate in those processes.

9. This Court should block Defendants from implementing the West Potomac Plan until they comply with their legal obligations.

**PARTIES**

10. Plaintiff National Parks Conservation Association (NPCA) is a national nonprofit, tax-exempt § 501(c)(3) membership organization headquartered in Washington, D.C.  Since NPCA was established in 1919, it has been a leading voice of the American people in protecting and enhancing the National Park System.  With more than 1.9 million members and supporters nationwide and a network of more than two dozen programmatic locations in eleven regions, NPCA and its members and supporters work to protect and preserve the country's most iconic and inspirational places for present and future generations.

11. NPCA and its members have longstanding interests in the preservation of West Potomac Park.  NPCA and its members would, if given the opportunity, participate in CWA, NHPA, NEPA, and other processes for the West Potomac Plan, including by reviewing environmental documents, submitting comments, engaging in section 106 consultation, and engaging with the National Capital Planning Commission (NCPC), the Commission of Fine Arts (CFA), and other federal agencies.  NPCA regularly participates in these consultation and review processes for other projects.  Defendants' failure to initiate and complete those processes with respect to the West Potomac Plan deprives NPCA and its members of procedural rights and information to

3

which they are legally entitled and directly impairs their ability to protect their historic, aesthetic, recreational, communal, professional, economic, and organizational interests in West Potomac Park.

12. NPCA members live, work, and recreate throughout the District, including in and around West Potomac Park. NPCA has at least one member who lives around, works around, and recreates in and around West Potomac Park. NPCA also has at least one member who regularly uses, views, and enjoys West Potomac Park for its recreational values, historic values, communal values, and aesthetic values; who plans to continue using, viewing, and enjoying West Potomac Park for those qualities; and who has interests in those qualities that are injured by Defendants. For example, NPCA member Craig Crutchfield bikes in West Potomac Park at least once a month and has done so regularly for the past few years. Mr. Crutchfield also visits the nearby Franklin Delano Roosevelt and Martin Luther King, Jr. Memorials and enjoys the serenity and isolation of those sites. West Potomac Park is a special place for NPCA member and employee Edward Stierli as well. Mr. Stierli proposed to his wife in the park in 2011, and to this day he continues to visit the park several times a year with his family to picnic, walk along the river, and play sports like soccer and frisbee in the open grassy areas.

13. Plaintiff DC Preservation League (DCPL) is a nonprofit, tax-exempt § 501(c)(3) membership organization with its principal office in Washington, D.C. DCPL's mission is to preserve, protect, and enhance the built environment of the District of Columbia through advocacy and education.

14. DCPL and its members have longstanding interests in the preservation of West Potomac Park. DCPL and its members would, if given the opportunity, participate in CWA, NHPA, NEPA, and other processes for the West Potomac Plan, including by reviewing environmental documents, submitting comments, engaging in section 106 consultation, and engaging with the

4

NCPC, the CFA, and other federal agencies.  DCPL regularly participates in these consultation and review processes for other projects.  Defendants' failure to initiate and complete those processes with respect to the West Potomac Plan deprives DCPL and its members of procedural rights and information to which they are legally entitled and directly impairs their ability to protect their historic, aesthetic, recreational, communal, professional, economic, and organizational interests in West Potomac Park.

15. Plaintiff National Mall Coalition is an independent § 501(c)(3) nonprofit citizens' organization founded in 2000.  The Coalition advocates for comprehensive, visionary planning for the National Mall to ensure it remains a protected, symbolic landscape and a functioning stage for American democracy.  The Coalition's mission includes advocating for a comprehensive master plan for the National Mall's future.  The Coalition participates in and collaborates with other organizations on public meetings for Mall-related projects, prepares and presents thoughtful testimony to Congress and at design review hearings, and informs the public about relevant Mall issues.  The Coalition has participated in the public consultation process for numerous projects, including Washington Monument security, the National Museum of African American History and Culture, the Vietnam Memorial Visitors Center, the National Park Service's National Mall Plan, the Smithsonian's South Mall Campus Master Plan, and security plans for many museums, monuments, and public buildings.  The Coalition is often quoted in the media as a voice for the public interest on these projects.

16. The Coalition has longstanding interests in the preservation of West Potomac Park.  The Coalition would, if given the opportunity, participate in CWA, NHPA, NEPA, and other processes for the West Potomac Plan, including by reviewing environmental documents, submitting comments, engaging in section 106 consultation, and engaging with the NCPC, the CFA, and other federal agencies.  The Coalition regularly participates in these consultation and

review processes for other projects.  Defendants' failure to initiate and complete those processes with respect to the West Potomac Plan deprives the Coalition of procedural rights and information to which it is legally entitled and directly impairs its ability to protect its historic, aesthetic, recreational, communal, professional, economic, and organizational interests in West Potomac Park.

17. Plaintiff Olmsted Network (ON) is a Washington, D.C.–based nonprofit dedicated to preserving and championing the legacy of Frederick Law Olmsted—the preeminent nineteenth-century landscape architect and founder of the profession—and his firm and to advocating for public access to parks.  Founded in 1980, ON advocates for the stewardship, education, and protection of historic parks, landscapes, and urban-planning principles across North America.  Its network includes public agencies, park conservancies, practitioners, scholars, and community advocates responsible for hundreds of historic public parks and landscapes across the United States.  ON provides continuing education on landscape architecture and hosts annual conferences and webinars focused on historic preservation and community identity.  ON also partners with local municipalities, citizen activists, and park stewards to defend and restore Olmsted-designed landscapes from threats like commercial development.  ON regularly advocates for the protection of significant Olmsted-designed cultural landscapes around the country, including those involving federal agencies such as the National Park Service.

18. ON has longstanding interests in the preservation of West Potomac Park.  ON would, if given the opportunity, participate in CWA, NHPA, NEPA, and other processes for the West Potomac Plan, including by reviewing environmental documents, submitting comments, engaging in section 106 consultation, and engaging with the NCPC, the CFA, and other federal agencies.  ON has previously participated in section 106 consultation and other review processes.  Defendants' failure to initiate and complete those processes with respect to the West Potomac

Plan deprives ON of procedural rights and information to which it is legally entitled and directly impairs its ability to protect its historic, aesthetic, recreational, communal, professional, economic, and organizational interests in West Potomac Park.

19. Plaintiff the Committee of 100 on the Federal City (the Committee of 100) is a D.C. nonprofit § 501(c)(3) organization dedicated to safeguarding and advancing Washington, D.C.'s historic distinction, natural beauty, and overall livability.  Founded in 1923, the Committee of 100 advances thoughtful planning and preservation in the national capital.  The Committee of 100 and its members contribute expertise and civic action in the service of responsible planning in the District of Columbia.

20. The Committee of 100 has longstanding interests in the preservation of the National Mall and West Potomac Park.  The Committee of 100 would, if given the opportunity, participate in CWA, NHPA, NEPA, and other processes for the West Potomac Plan, including by reviewing environmental documents, submitting comments, engaging in section 106 consultation, and engaging with the NCPC, the CFA, and other federal agencies.  The Committee of 100 regularly participates in these consultation and review processes for other projects.  The Committee of 100 has previously taken legal action to defend the National Mall from encroachments in violation of the Commemorative Works Act and other federal laws applicable to projects affecting the Mall. *See, e.g.*, *Nat'l Coal. to Save Our Mall v. Norton*, No. 00-cv-2371 (D.D.C.).  Defendants' failure to initiate and complete the requisite legal processes with respect to the West Potomac Plan deprives the Committee of 100 of procedural rights and information to which it is legally entitled and directly impairs its ability to protect its historic, aesthetic, recreational, communal, professional, economic, and organizational interests in West Potomac Park.

21. Members of the Committee of 100 live, work, and recreate throughout the District, including in and around West Potomac Park.  The Committee of 100 has at least one member

who regularly visits, uses, views, and enjoys West Potomac Park for its recreational values, historic values, communal values, and aesthetic values; who plans to continue using, viewing, and enjoying West Potomac Park for those qualities; and who has interests in those qualities that are injured by Defendants.  For example, Committee of 100 members Jim Dougherty and Paul Edmondson regularly include West Potomac Park in their bicycle rides in Washington, D.C., stopping to visit the carefully planned and sited Franklin Delano Roosevelt and Martin Luther King, Jr. Memorials, and enjoying the serenity and isolation of those sites.

22. Plaintiff The Cultural Landscape Foundation (TCLF) is a nonprofit, tax-exempt organization established in 1998 with its principal place of business in Washington, D.C.  TCLF connects people to places by educating and engaging the public to make our shared landscape heritage more visible, identify its value, and empower its stewards.  TCLF achieves this mission through the ongoing development of its four core programs: *What's Out There®*, North America's largest and most exhaustive database of cultural landscapes; *Pioneers of American Landscape Design®*, an in-depth multimedia library that includes video oral histories chronicling the lives of significant landscape architects and educators; *Landslide®*, an ongoing collection of important landscapes and landscape features that are threatened; and *The Cornelia Hahn Oberlander International Landscape Architecture Prize®*, a biennial prize in landscape architecture that includes a $100,000 monetary award and two years of public engagement activities.

23. TCLF has longstanding interests in raising the visibility, communicating the design history, and promoting informed and appropriate management and stewardship of West Potomac Park, which includes the Franklin Delano Roosevelt Memorial, World War II Memorial, and Martin Luther King, Jr. Memorial, all of which are featured in TCLF's *What's Out There* database.  The FDR Memorial is featured in TCLF's National Park Service–funded *Cultural*

*Landscapes Guide to D.C. Modernism*, and its landscape architect, Lawrence Halprin, is the subject of a TCLF *Pioneers Oral History*, which features discussion of the FDR Memorial. James van Sweden, the landscape architect of the World War II Memorial on the National Mall, is also the subject of a TCLF *Pioneers Oral History*, which features discussion of the WWII Memorial.  TCLF would, if given the opportunity, participate in CWA, NHPA, NEPA, and other processes for the West Potomac Plan, including by reviewing environmental documents, submitting comments, engaging in section 106 consultation, and engaging with the NCPC, the CFA, and other federal agencies.  TCLF regularly participates in these consultation and review processes for other projects.  Defendants' failure to initiate and complete those processes with respect to the West Potomac Plan deprives TCLF of procedural rights and information to which it is legally entitled and directly impairs its ability to protect its historic, aesthetic, recreational, communal, professional, economic, and organizational interests in West Potomac Park.

24. Plaintiff Steve Longenecker is a resident of the Petworth neighborhood in Washington, D.C.  Mr. Longenecker has used West Potomac Park regularly to play ultimate frisbee for more than a decade, and he plans to continue doing so.  Mr. Longenecker's aesthetic, recreational, cultural, and communal interests in West Potomac Park are being harmed and will continue to be harmed by Defendants' actions.

25. Defendant Doug Burgum is Secretary of the Interior.  He is sued in his official capacity. Secretary Burgum "is charged with the supervision of public business relating to" the National Park Service and all public lands.  43 U.S.C. § 1457(11), (13).  Accordingly, he is responsible for the supervision of public business related to West Potomac Park.

26. Defendant U.S. Department of the Interior is a federal agency headquartered at 1849 C Street NW, Washington, D.C. 20240.  It is led by the Secretary of the Interior, whose

9

responsibilities include "the supervision of public business relating to" the National Park Service and all public lands. *Id.*

27. Defendant Jessica Bowron assumed the role of Acting Director of the National Park Service on or about January 20, 2025. More recently, she has been referred to as the "Comptroller Exercising the Delegated Authority of the Director." She is sued in her official capacity. The Director is responsible for "the supervision, management, and control of [National Park] System units." 54 U.S.C. § 100302(a)(3).

28. Defendant National Park Service is a bureau of the Department of the Interior, which is a federal agency headquartered at 1849 C Street NW, Washington, D.C. 20240. The Park Service is responsible for "promot[ing] and regulat[ing] the use of the National Park System," 54 U.S.C. § 100101(a), which includes West Potomac Park (a subunit of the National Mall and Memorial Parks).

## JURISDICTION AND VENUE

29. The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because the claims arise under federal law, including the Commemorative Works Act; 40 U.S.C. § 8106; the National Historic Preservation Act; the National Environmental Policy Act; the Organic Act of 1916; the Act of March 3, 1897; and the Administrative Procedure Act (APA).

30. The Court has authority to enter a declaratory judgment and to provide temporary, preliminary, and permanent injunctive relief pursuant to Federal Rules of Civil Procedure 57 and 65, 28 U.S.C. §§ 2201–2202, the All Writs Act, and the Court's inherent equitable powers. The APA further authorizes the Court to stay, set aside, enjoin, or vacate agency action that is without observance of procedure required by law, outside the statutory authority of the agency, arbitrary or capricious, or otherwise not in accordance with law. 5 U.S.C. §§ 701–706.

10

31. Venue is proper under 28 U.S.C. § 1391(e) because Defendants are agencies and officers of the United States residing in this District, and a substantial part of the events or omissions giving rise to the claims occurred in this District.

## BACKGROUND

**The National Mall and West Potomac Park are carefully designed for the enjoyment of the public.**

32. The National Mall is "the premiere civic and symbolic space in our nation." *National Mall and Memorial Parks: Basic Information*, Nat'l Park Serv., https://perma.cc/KWA7-HVUE (last visited June 10, 2026).

33. Pierre L'Enfant's original design for the capital city, conceived in 1791, envisioned "open spaces and parklands" that "created an ideal stage for national expressions of remembrance, observance, celebration, and First Amendment rights." *Foundation Document: National Mall and Memorial Parks* 3 (Oct. 2017), https://perma.cc/NP6E-JTGR.

34. The Mall was the centerpiece of L'Enfant's plan, "where he envisioned a dedicated public space for learning and recreation—a 'place of general resort,' a tree-lined 'grand avenue,' surrounded by 'play houses, room[s] of assembly, academies and all sort of places as may be attractive to the learned and afford diversion to the idle.'" Senate Hist. Off., *Senate Stories | A Capital Plan: James McMillan, the Senate Park Commission, and the Rediscovery of the National Mall*, U.S. Senate (Dec. 12, 2022) (alteration in original), https://perma.cc/7F8Q-G8FQ.

35. Nearly a century later, the U.S. Army Corps of Engineers created East and West Potomac Parks in an ambitious reclamation project. *East and West Potomac Parks Historic District*, DC Historic Sites, https://perma.cc/LK7B-M2LB (last visited June 10, 2026).

36. In 1897, Congress passed a law reserving this reclaimed land for recreational use, providing that "the entire area formerly known as the Potomac Flats, and now being reclaimed, together with the tidal reservoirs, be, and the same are hereby, made and declared a public park,

under the name of the Potomac Park, and to be forever held and used as a park for the recreation and pleasure of the people." Act of Mar. 3, 1897, ch. 375, 29 Stat. 624.

37. A few years after that, in 1901, the Senate established the McMillan Commission to create a new plan for the District. Jacob R. Straus, Cong. Rsch. Serv., R41658, *Commemorative Works in the District of Columbia: Background and Practice* 4 (2023), https://perma.cc/N94N-MS9L. Specifically, the commission was tasked with examining questions "as to the location of public buildings, of preserving spaces for parks in the portion of the District beyond the limits of the city of Washington, of connecting and developing existing parks by attractive drives, and of providing for the recreation and health of a constantly growing population." *Id.* (citation omitted).

38. In its report, the commission noted that "the demand for new public buildings and memorials has reached an acute stage," and it highlighted "the uncertainty in securing appropriate sites." *Id.* at 5 (citation omitted). The commission favored returning "the monumental core of the city, particularly the Mall, to the intent of L'Enfant's plans." *Id.* And the commission's plan reserved the interior of West Potomac Park for recreational use. *East and West Potomac Parks Historic District*, *supra*.

39. The Office of Public Buildings and Grounds—a predecessor of the Park Service—then set out to develop a park area that "preserved the features of its natural beauty or enhanced the natural landscape." *National Register of Historic Places Inventory – Nomination Form for East and West Potomac Parks* § 7 (July 15, 1972), https://perma.cc/6XYU-3FVG.

40. The early 1900s saw the construction in West Potomac Park of a boat dock, polo fields, and a wooden bandstand, to go along with paths and walkways throughout the park. *Id.* The city of Tokyo also gifted 3,000 cherry trees, many of which were planted around the Tidal Basin, where some of their progeny still stand today. *Id.*

41. With the dedication of the Lincoln Memorial in 1922, the basic present layout of West Potomac Park was completed, and all land was in use for recreational purposes.  *Id.*

**Congress establishes a comprehensive process for constructing new monuments.**

42. More than sixty years later, following what some described as "monumental chaos" over the creation of the Vietnam Veterans Memorial, Congress passed and President Reagan signed the Commemorative Works Act of 1986.  *See Hearing Concerning H.R. 1693 Before the Subcomm. on Nat'l Parks, Forests & Pub. Lands of the H.R. Comm. on Nat. Res.* (Mar. 6, 2008) (statement of Katherine H. Stevenson, Acting Assistant Dir., Bus. Servs., Nat'l Park Serv.), https://perma.cc/3DYC-RGES.  A House report recognized the need for legislation due to "numerous groups" seeking to place additional commemorative works in the District.  Straus, *Commemorative Works in the District of Columbia*, *supra*, at 7.

43. The CWA established "a statutory process for the creation, design, and construction of commemorative works in the District of Columbia."  *Id.* at i.  The act was intended to, among other things, "preserve the integrity of the comprehensive design of the L'Enfant and McMillan plans for the Nation's Capital"; "ensure the continued public use and enjoyment of open space in the District of Columbia and its environs"; "preserve, protect and maintain the limited amount of open space available to residents of, and visitors to, the Nation's Capital"; and "ensure that future commemorative works . . . are appropriately designed, constructed, and located [and] reflect a consensus of the lasting national significance of the subjects involved."  40 U.S.C. § 8901.

44. The CWA applies to commemorative works, defined as "any statue, monument, sculpture, memorial, plaque, inscription, or other structure or landscape feature, including a garden or memorial grove, designed to perpetuate in a permanent manner the memory of an individual, group, event or other significant element of American history, except that the term

13

does not include any such item which is located within the interior of a structure or a structure which is primarily used for other purposes." *Id.* § 8902(a)(1). It governs commemorative works "in areas administered by the National Park Service and the Administrator of General Services in the District of Columbia and its environs." *Id.* § 8901(4).

45. The CWA provides that such commemorative works may be established "only as specifically authorized by law." *Id.* § 8903(a)(1). "In considering legislation authorizing commemorative works in the District of Columbia," the relevant congressional committees must "solicit the views of the National Capital Memorial Advisory Commission." *Id.* § 8903(d).

46. When Congress authorizes a commemorative work, moreover, it designates a "sponsor" to establish the work. *Id.* § 8902(a)(4). The sponsor must consult with the National Capital Memorial Advisory Commission "regarding the selection of alternative sites and design concepts." *Id.* § 8905(a)(1). After that consultation, the Secretary of the Interior or the Administrator of General Services "must submit, on behalf of the sponsor, site and design proposals to the Commission of Fine Arts and the National Capital Planning Commission for their approval." *Id.* § 8905(a)(2). These actors must ensure that the commemorative work "does not interfere with, or encroach on, an existing commemorative work" and that "to the maximum extent practicable, it protects open space, existing public use, and cultural and natural resources." *Id.* § 8905(b)(2)(A)–(B). The Secretary or Administrator may issue a construction permit only if, among other requirements, "knowledgeable individuals qualified in the field of preservation and maintenance have been consulted . . . to ensure that the commemorative work meets high professional standards." *Id.* § 8906(a)(2).

47. A commemorative work for an event, an individual, or a group of individuals generally "may not be authorized until after the 25th anniversary of the event, death of the individual, or death of the last surviving member of the group." *Id.* § 8903(c).

14

48. Several years after the enactment of the CWA, due to the number of requests to place memorials on the National Mall, Congress further recognized "the need to preserve the L'Enfant and McMillan visions and prevent the Mall area from being overbuilt." Straus, *Commemorative Works in the District of Columbia*, *supra*, at 11.

49. The chair of the Commission of Fine Arts described the need for a "reserve" area with a building moratorium: "With the considerable pressures to add new memorials to the city, it is inevitable that many sponsors of what they feel are preeminent causes would favor a location in the proposed reserve. Under such a continuing threat, it makes sense to define this central precinct as a no-build zone." *Id.* at 12 (citation omitted).

50. Congress therefore amended the CWA in 2003 to create the "Reserve." The Reserve encompasses "the great cross-axis of the Mall, which generally extends from the United States Capitol to the Lincoln Memorial, and from the White House to the Jefferson Memorial," 40 U.S.C. § 8902(a)(3), as shown on the map below[1]:

---

[1] *Commemorative Areas Washington, DC and Environs (Map Number 869/86501 B)*, Nat'l Park Serv. (June 24, 2003), https://perma.cc/NS43-RCZ3.



51. Congress found that the Reserve "is a substantially completed work of civic art."

Commemorative Works Clarification and Revision Act of 2003, Pub. L. No. 108-126,

§ 202(a)(1), 117 Stat. 1348, 1349 (codified at 40 U.S.C. § 8901 note).

52. After November 17, 2003, "no commemorative work or visitor center shall be located

within the Reserve."  40 U.S.C. § 8908(c).

53. Unless Congress passes a law overriding that language, a commemorative work cannot

be placed within the Reserve.[2]

---

[2] *See, e.g.*, Pub. L. No. 108-126, § 101, 117 Stat. 1348, 1348 (authorizing construction of Vietnam Veterans Memorial Visitor Center and stating that the provision of 40 U.S.C. § 8908 "prohibiting the siting of a visitor center within the Reserve shall not apply"); Pub. L. No. 111-88, § 128, 123 Stat. 2904, 2933 (2009) (authorizing addition of plaque to World War II

54. Other statutes also restrict the construction of monuments and memorials in the District of Columbia.

55. Under 40 U.S.C. § 8106, "[a] building or structure shall not be erected on any reservation, park, or public grounds of the Federal Government in the District of Columbia without express authority of Congress."

56. The National Historic Preservation Act provides that any agency head with jurisdiction over a federal "undertaking," "prior to the approval of the expenditure of any Federal funds on the undertaking or prior to the issuance of any license, shall take into account the effect of the undertaking on any historic property" and "shall afford the [Advisory Council on Historic Preservation] a reasonable opportunity to comment with regard to the undertaking."  54 U.S.C. § 306108; *see id.* § 304101 (establishing Advisory Council on Historic Preservation).  Any site listed on the National Register is a "historic property."  *Id.* § 300308.  Agencies must assess whether an undertaking "may alter, directly or indirectly, any of the characteristics of a historic property . . . in a manner that would diminish the integrity of the property's location, design, setting, materials, workmanship, feeling, or association."  36 C.F.R. § 800.5(a)(1).  These "adverse effects" may include physical destruction or damage, changing "the character of the property's use," or introducing "visual, atmospheric or audible elements that diminish the integrity of the property's significant historic features."  *Id.* § 800.5(a)(2).  Even if the agency "proposes a finding of no adverse effect," it must "notify all consulting parties of the finding."  *Id.* § 800.5(c).  And agencies must generally "provide the public with information about an

---

Memorial to commemorate Senator Dole's leadership, "[n]otwithstanding any other law"); Pub. L. No. 117-81, § 6605, 135 Stat. 1541, 2442 (2021) ("Notwithstanding [40 U.S.C. § 8908(c)], the National Global War on Terrorism Memorial . . . shall be located within the Reserve."); *see also* Jacob R. Straus, Cong. Rsch. Serv., IF11937, *Commemorative Works Act: Siting Memorials in the District of Columbia* 2 (2024), https://perma.cc/X6F7-HATM (collecting examples of exemptions authorized by Congress).

undertaking and its effects on historic properties and seek public comment and input." *Id.* § 800.2(d)(2).

57. Similarly, the National Environmental Policy Act requires that federal agencies "take a 'hard look' at the environmental consequences before taking a major action." *Balt. Gas & Elec. Co. v. Nat. Res. Def. Council, Inc.*, 462 U.S. 87, 97 (1983) (citation omitted). Where a proposed action "has a reasonably foreseeable significant effect on the quality of the human environment," the agency must issue an environmental impact statement addressing those effects and any reasonable alternatives. 42 U.S.C. § 4336(b)(1); *see id.* § 4332(C). If the agency finds that the proposed action will not have such an effect, it still must prepare an "environmental assessment" setting forth the basis for that finding. *Id.* § 4336(b)(2).

58. In addition, a federal agency must "advise and consult with the [National Capital Planning] Commission as the agency prepares plans and programs in preliminary and successive stages that affect the plan and development of the National Capital." 40 U.S.C. § 8722(b)(1); *see also id.* § 8905(a)(2).

59. In 2001, prior to the creation of the Reserve, an NCPC Master Plan evaluated the possibility of West Potomac Park hosting a new memorial and said the site of the Park Service stables "has the potential to accommodate a memorial of limited size and visibility." Nat'l Cap. Plan. Comm'n, *Memorials and Museums Master Plan* 79 (Dec. 2001), https://perma.cc/2SLW-UZSH. It also noted that any memorial "should respect and complement the historic landscape setting," should be "of limited scale and extent with assumed limitations on massing and height," and "should respect and preserve the adjacent existing amenities of parkland and woodlands." *Id.*

60. In the same Master Plan, NCPC considered another West Potomac Park site along the Potomac River shoreline and identified comparable limitations on any new memorial:

18

"Consideration of this site for a future memorial must include its potential relationship with other nearby memorials.  In order to complement existing commemorative and landscape features, future memorials at this location are limited to understated or small scale elements."  *Id.* at 109; *see also id.* (text accompanying site image: "appropriate site for future small scale commemorative feature respecting the context of the nearby Lincoln Memorial").

61. NCPC included similar warnings in discussing another potential site on the same shoreline.  *Id.* at 136 ("Consideration of a site for a future memorial feature in this location must include its relationship with other nearby memorials.  In order to complement existing commemorative and landscape features, future memorials at these locations should include only understated or small scale elements."); *see also id.* (text accompanying site image: "appropriate context for future small scale commemorative feature that would respect the context of the nearby FDR and MLK Memorials").

62. NCPC amended this Master Plan in 2006 to reflect the amendments to the CWA that established the Reserve.  To comply with those amendments, NCPC removed the sites in West Potomac Park from its list of eligible locations for future memorials and museums.  *Id.* at 21, 23.

63. Like NCPC, the Commission of Fine Arts plays an important role in approving site and design proposals for commemorative works.  *See* 40 U.S.C. § 8905(a)(2).

64. The CFA "shall advise on . . . the location of statues, fountains, and monuments in the public squares, streets, and parks in the District of Columbia," as well as "the selection of models for statues, fountains, and monuments erected under the authority of the Federal Government." 40 U.S.C. § 9102(a)(1), (2).

**President Trump announces plans for a sculpture garden during his first term.**

65. After the killing of George Floyd in May 2020, and the wave of protests that followed, local communities and lawmakers removed more than 160 Confederate symbols from public

19

spaces across the country.  Neil Vigdor & Daniel Victor, *Over 160 Confederate Symbols Were Removed in 2020, Group Says*, N.Y. Times (Feb. 23, 2021), https://perma.cc/R3KN-W3H4.

66. In a July 2020 speech, President Trump characterized these removals as "a merciless campaign to wipe out our history, defame our heroes, erase our values and indoctrinate our children."  Betsy Klein, *Trump Uses Mount Rushmore Address to Rail Against Removal of Monuments*, CNN (July 4, 2020), https://perma.cc/6X4P-8QH6.  He lambasted "cancel culture" and schools that teach students "to hate their own country."  *Id.*  And he promised to establish "a new monument to the giants of our past" by creating a "National Garden of American Heroes." *Id.*

67. On July 3, 2020, President Trump signed an executive order titled "Building and Rebuilding Monuments to American Heroes."  Exec. Order No. 13934, 85 Fed. Reg. 41165 (July 3, 2020).  The order criticized the removal of monuments as "an assault on our collective national memory" and declared that "it is our responsibility as Americans to stand strong against this violence."  *Id.* § 1.

68. The order announced that it would be the policy of the United States "to establish a statuary park named the National Garden of American Heroes."  *Id.* § 3(a).  It created an interagency task force to propose options for the creation of the garden, including potential locations.  *Id.* § 3(b).  The task force was required to "(i) strive to open the National Garden expeditiously; (ii) evaluate the feasibility of creating the National Garden through a variety of potential avenues, including existing agency authorities and appropriations; and (iii) consider the availability of authority to encourage and accept the donation or loan of statues."  *Id.*

69. The order declared that statues "should depict historically significant Americans . . . who have contributed positively to America throughout our history."  *Id.* § 3(c)(iii).  "None will have lived perfect lives," the order emphasized, "but all will be worth honoring, remembering, and

20

studying." *Id.* It provided an initial list of thirty-one figures whose statues would be included in the garden. *Id.* § 3(c)(i).

70. The order further directed that the garden "should be located on a site of natural beauty" that is "proximate to at least one major population center," and it "should not cause significant disruption to the local community." *Id.* § 3(c)(v).

71. The order directed the task force to "examine the appropriations authority of the agencies represented on it in light of the purpose and policy of this order" and to "make recommendations for the use of these agencies' appropriations." *Id.* § 4(a).

72. The order said the garden "should be opened for public access prior to . . . July 4, 2026." *Id.* § 3(c)(ii).

73. On January 18, 2021, just days before the end of his first term, President Trump signed another executive order titled "Building the National Garden of American Heroes." Exec. Order No. 13978, 86 Fed. Reg. 6809 (Jan. 18, 2021). The order proclaimed that "America is responding to the tragic toppling of monuments to our founding generation and the giants of our past by commencing a new national project for their restoration, veneration, and celebration." *Id.* § 2. The order added hundreds of additional names to the previous list, bringing the total to 244 figures. *Id.* § 3(b). Among those 244 names are several individuals who died less than twenty-five years ago.

74. The order directed the Secretary of the Interior to "identify a site suitable for the establishment of the National Garden" and to "proceed with construction of the National Garden at that site, to the extent consistent with the Secretary's existing authorities or authority later provided by the Congress." *Id.* § 4(a).

75. The order also instructed the Secretary of the Interior to "provide funding" for the garden, "as appropriate and consistent with available appropriations and applicable law." *Id.*

21

§ 5(a). And it directed the chairs of the National Endowment for the Arts (NEA) and the National Endowment for the Humanities (NEH) to "target spending one-twelfth of the discretionary funds available to their agencies on commissioning statues of individuals . . . for placement in the National Garden." *Id.* § 5(b).

76. On May 14, 2021, President Biden rescinded both of these executive orders. Exec. Order No. 14029, 86 Fed. Reg. 27025 (May 14, 2021).

**President Trump resumes and accelerates plans for the garden in his second term.**

77. On January 29, 2025, President Trump reinstated both orders in an executive order titled "Celebrating America's 250th Birthday." Exec. Order No. 14189, 90 Fed. Reg. 8849 (Jan. 29, 2025). The order promised "to provide a grand celebration worthy of the momentous occasion of the 250th anniversary of American Independence on July 4, 2026." *Id.* § 1. It ordered the Assistant to the President for Domestic Policy to "recommend to the President additional historically significant Americans for inclusion in the National Garden of American Heroes, to bring the total number of heroes to 250." *Id.* § 3(b).

78. The order directed that the garden should be opened to the public "as expeditiously as possible." *Id.* § 3(c).

79. In April 2025, the acting chair of the NEH told members of the National Council on the Humanities that some NEH and NEA funds—about $17 million from each agency—would be redirected to the garden. Janay Kingsberry & Travis M. Andrews, *Trump Revives Plan to Spend NEH, NEA Funds on 'Garden of American Heroes,'* Wash. Post (Apr. 11, 2025), https://perma.cc/8HJ6-9FVJ.

80. That news came in the wake of the termination of more than 1,000 NEH grants that were apparently canceled to repurpose funds for the garden and other 250th anniversary celebrations. *Id.*

81. The NEH then announced a grant program to support the garden, requesting "preliminary concepts" for statues and offering awards of up to $200,000 per statue.  Press Release, *NEH Announces Grant Opportunity to Create Statues of Iconic Americans for the National Garden of American Heroes*, Nat'l Endowment for the Humanities (Apr. 24, 2025), https://perma.cc/CP8L-29QG.

82. According to the notice of funding opportunity, statues "should be in the classical style, lifelike, and created from marble, granite, bronze, copper, or brass."  Nat'l Endowment for the Humanities, *Notice of Funding Opportunity, National Garden of American Heroes: Statues* 6 (May 21, 2025), https://perma.cc/ESJ8-XSTB.  Standing figures must be at least six-and-a-half feet tall, while seated figures must be at least five feet tall, and all sculptures must plan for a pedestal at least three feet tall.  *Id.*

83. The notice called for statues to be "completed and delivered by June 1, 2026."  *Id.* at 2.

84. In July 2025, Congress appropriated $40 million to the NEH, to remain available through fiscal year 2028, "for the procurement of statues as described in" the three relevant executive orders.  Pub. L. No. 119-21, § 86001, 139 Stat. 72, 356 (2025).

**Defendants adopt and begin to implement the West Potomac Plan.**

85. In January 2026, President Trump said the garden was "going to be most likely right on the Potomac River. . . .  That hasn't been a final decision, but it's getting close."  Katie Rogers et al., *The Next Phase of Trump's Renovations: A New 'Upper West Wing,'* N.Y. Times (Jan. 8, 2026), https://perma.cc/Z7KF-NKY5.

86. A few days later, the administration was reported to be eyeing West Potomac Park as a potential location for the project.  Dan Diamond et al., *Trump Officials Eye Park Near National Mall for Garden of Heroes*, Wash. Post (Jan. 13, 2026), https://perma.cc/G7Y7-2PPX.  White House officials said the planned site was still under discussion.  *Id.*

87. By April 2026, the administration had zeroed in on West Potomac Park and hired an architect to advise the project. Sunlen Serfaty, *Trump Wants a Sculpture Garden for America's 250th Birthday. Sources Say It's Unlikely Even One Statue Will Be Ready*, CNN (Apr. 19, 2026), https://perma.cc/PK88-AU82.

88. The administration reportedly aims to have twenty-five to fifty statues delivered by July 2026. *Id.*

89. Public reporting observed that the planned site's proximity to the Potomac River could introduce concerns about ecological disruption. Luke Broadwater & Zachary Small, *Trump's Vision for 'Garden of Heroes' Keeps Getting Bigger and Higher in Cost*, N.Y. Times (May 3, 2026), https://perma.cc/WZE5-BZ4N.

90. Plans for the project have grown "larger" and "more expensive," now including formal gardens, reflecting pools, plazas, dining facilities, and an amphitheater alongside the statues. *Id.*

91. That follows a trend evident in other vanity projects the administration has undertaken: the President initially claimed that "repairs" for the Lincoln Memorial Reflecting Pool would cost only $1.8 million, but that figure ballooned to $13.1 million. David A. Fahrenthold & Luke Broadwater, *Reflecting Pool Repairs to Cost $13.1 Million. Trump Had Promised $1.8 Million*, N.Y. Times (May 11, 2026), https://perma.cc/CL6C-MPZZ.

92. Similarly, the administration's plans for the White House ballroom have grown dramatically in size and cost. Jake Horton & Lucy Gilder, *How Trump's White House Ballroom Plan Has Doubled in Size and Cost Over a Year*, BBC (June 4, 2026), https://perma.cc/GB5L-BMUS.

93. A top fundraiser for President Trump has already begun seeking donations on behalf of the "National Garden of American Heroes Foundation" for both the garden complex and the renovation of East Potomac Golf Course. Rick Maese & Dan Diamond, *Trump Fundraiser*

24

*Shares Plans for 'Garden of Heroes,' Golf Course as Takeover Looms*, Wash. Post (May 2, 2026), https://perma.cc/D93M-XEBU.

94. According to a pledge agreement, the foundation is "a national nonprofit dedicated to the improvement, revitalization, and beautification of the National Mall and other public spaces around the Nation's capital" that is "seeking status as a 501(c)(3) tax-exempt" organization. *DC Preservation League v. U.S. Dep't of Interior*, No. 26-cv-477 (D.D.C. May 3, 2026), Dkt. No. 47-2 at 8, 10. The pledge agreement states that "[a]s the country approaches its 250th anniversary of independence, The National Garden of American Heroes Foundation seeks to unite citizens, institutions, and leaders around a renewed vision for the National Mall." *Id.* at 8.

95. The pledge agreement further explains that in 2026, the foundation "will launch two landmark initiatives that embody its mission to honor America's 250th anniversary through lasting national investment." *Id.* One of those initiatives is "the development of The National Garden of American Heroes at West Potomac Park—a transformative project that will create a dignified, inspiring public space dedicated to the men and women who shaped the Nation's history." *Id.*

96. The pledge agreement features renderings showing how the project will transform West Potomac Park and dramatically impair—if not eliminate altogether—its recreational qualities, including by removing the softball fields, diminishing other open grassy areas currently free for formal and informal recreational sports, and curtailing the space available to bicyclists. The renderings also illustrate that the garden complex will be situated right on top of the FDR and MLK memorials. And consistent with reports on the expansive plans for the complex, the renderings show that it will have multiple buildings and structures, including not only statues but also dining facilities and other features:









97. The pledge agreement provides instructions for donors to make a "binding commitment of payment," including wiring instructions. *Id.* at 9, 11.

98. The pledge agreement states that gifts "will be used" to support the foundation and its "founding projects," specifically including the garden complex. *Id.* at 9.

99. The Park Service has detailed policies and procedures governing partnerships with philanthropic organizations that raise funds to benefit the Park Service. *See, e.g.*, Director's Order No. 21: Donations and Philanthropic Partnerships, Nat'l Park Serv. (Dec. 28, 2016), https://perma.cc/ZR32-24JC; *Partnerships: Reference Manual for DO21*, Nat'l Park Serv., https://perma.cc/DWB3-TSZ6 (last visited June 14, 2026). For example, such partnerships are governed by agreements between the Park Service and the philanthropic organization that define the scope and terms of the relationship, and the organization must comply with established donor vetting procedures. Director's Order No. 21 §§ 5, 6. And while the Park Service is authorized to accept monetary donations "for the purposes of the [National Park] System," 54 U.S.C. § 101101, donations received by the Park Service pursuant to its gift acceptance authority must be deposited into a congressionally established trust fund account and treated as appropriated funds, 31 U.S.C. § 1321(a)(17), (b)(1). There has been no public indication whether the Park

27

Service has followed these rules with respect to the National Garden of American Heroes

Foundation.

100. Defendants made a final decision to adopt the West Potomac Plan no later than May

15, 2026, as revealed by President Trump's posting on social media:

> I am proud to announce the site of the NATIONAL GARDEN OF AMERICAN HEROES. This magnificent exhibition of statues will be located in West Potomac Park, which we are transforming into one of the World's most beautiful public spaces. Right now, it is a totally BARREN field of Prime Waterfront Real Estate along our Mighty Potomac River. When finished, West Potomac Park will be a World Class Masterpiece with elegant Landscaping, and adorned with Beautiful Statues, and be yet another one of my great projects to make Washington, D.C., the Safest and Most Beautiful Capital in the World. The National Garden of American Heroes will feature the MOST BEAUTIFUL collection of statues of AMERICAN HEROES, featuring our illustrious Founding Fathers, Military Warriors, Religious Leaders, Civil Rights Champions, World Class Athletes, Artists, Entertainers, and MORE. The people of America (and the World!) will come here to learn and be inspired by the "Greats". The National Garden of American Heroes is one more project we are undertaking to honor the 250th Birthday of the Greatest Nation on Earth, THE UNITED STATES OF AMERICA!

Donald J. Trump (@realDonaldTrump), Truth Social (May 15, 2026, at 4:52 AM),

https://perma.cc/M6W9-TUF2.

101. The President also shared a rendering—similar to the ones in the pledge agreement—of

the project:

28



Donald J. Trump
@realDonaldTrump

I am proud to announce the site of the NATIONAL GARDEN OF AMERICAN HEROES. This magnificent exhibition of statues will be located in West Potomac Park, which we are transforming into one of the World's most beautiful public spaces. Right now, it is a totally BARREN field of Prime Waterfront Real Estate along our Mighty Potomac River. When finished, West Potomac Park will be a World Class Masterpiece with elegant Landscaping, and adorned with Beautiful Statues, and be yet another one of my great projects to make Washington, D.C., the Safest and Most Beautiful Capital in the World. The National Garden of American Heroes will feature the MOST BEAUTIFUL collection of statues of AMERICAN HEROES, featuring our Illustrious Founding Fathers, Military Warriors, Religious Leaders, Civil Rights Champions, World Class Athletes, Artists, Entertainers, and MORE. The people of America (and the World!) will come here to learn and be inspired by the "Greats". The National Garden of American Heroes is one more project we are undertaking to honor the 250th Birthday of the Greatest Nation on Earth, THE UNITED STATES OF AMERICA! President DONALD J. TRUMP

4.97k ReTruths   20.1k Likes                May 15, 2026, 4:52 AM

102. That same day, Secretary Burgum shared the same image and posted: "As America approaches its 250th birthday, @POTUS is continuing to honor our nation's legacy with the National Garden of American Heroes, a landmark in Washington, D.C. that will be enjoyed for generations to come."  Secretary Doug Burgum (@SecretaryBurgum), X (May 15, 2026, at 1:27 PM), https://perma.cc/NK92-CU9K.

103. Secretary Burgum's announcement of West Potomac Park as the site of the garden complex was definitive and not conditioned on congressional approval or other further steps.

104. A White House spokesperson said the garden complex "will be built to reflect the awesome splendor of our country's timeless exceptionalism."  Dan Diamond, *Trump Announces*

29

*Planned D.C. Site for Massive Sculpture Garden*, Wash. Post (May 15, 2026), https://perma.cc/ L3MY-WN9P.

105. Michael Curtis will serve as the lead designer for the garden complex, and the design team also includes two architects, a sculptor, and an urban planner. *Id.*

106. During an Oval Office announcement on June 4, 2026, the President stated that "the National Garden of American Heroes is going to be unbelievable" and told Secretary Burgum, "I'd like to know how are you doing on that and how are you doing on the great triumphal arch." *President Trump Announces $700 Million for Coal Industry*, at 22:02–26:08 (C-SPAN, June 4, 2026), https://www.c-span.org/program/white-house-event/president-trump-makes-announcement-on-clean-coal/680441.

107. The President explained that "we're doing [the arch] with the Department of Interior and we're also doing the National Garden of American Heroes, which is phenomenal." *Id.* He also described plans for a promenade—which he suggested some people want to call the "Trump Promenade"—connecting the Lincoln Memorial to the Potomac River. *Id.*

108. Secretary Burgum incorrectly claimed that "these are plans and ideas that have existed almost since the end of the Civil War." *Id.* He stated: "The views from this side, from West Potomac where the National Garden of Heroes was, looking across at the arch would be amazing." *Id.*

109. Secretary Burgum also incorrectly asserted that "[t]hese projects would complete the original vision of the McMillan Plan." *Id.* He linked the projects to "the celebration of our 250th anniversary" and said the "vision that [the President] has for these projects would extend for generations forward." *Id.*

30

**Plaintiffs and their members are injured by the West Potomac Plan.**

110. Plaintiffs NPCA, DCPL, National Mall Coalition, Olmsted Network, the Committee of 100, and TCLF (the Organizational Plaintiffs) and Mr. Longenecker have longstanding interests in the preservation of West Potomac Park.

111. The Organizational Plaintiffs would, if given the opportunity, participate in CWA, NHPA, NEPA, and other processes for the West Potomac Plan, including by reviewing environmental documents, submitting comments, engaging in section 106 consultation, and engaging with the NCPC, the CFA, and other federal agencies.

112. The Organizational Plaintiffs regularly participate in these consultation and review processes for other projects.

113. Defendants' failure to initiate and complete these processes with respect to the West Potomac Plan—including the final decision to site the garden complex in West Potomac Park—deprives the Organizational Plaintiffs of procedural rights and information to which they are legally entitled and directly impairs their ability to protect their historic, aesthetic, recreational, communal, professional, economic, and organizational interests in West Potomac Park.

114. Mr. Longenecker and members of Plaintiffs NPCA and the Committee of 100 are also injured by the West Potomac Plan.

115. West Potomac Park is regularly used for pickup sports, informal recreation, and large public events.

116. Mr. Longenecker and NPCA and Committee of 100 members routinely take advantage of West Potomac Park for these uses.

117. Defendants' adoption and implementation of the West Potomac Plan will detract from these uses or foreclose them altogether.

31

118. NPCA member Craig Crutchfield has long enjoyed biking in West Potomac Park. He bikes in the park at least once a month and plans to continue doing so, and he cherishes the experience of biking with the Potomac River on one side and the Mall on the other. Mr. Crutchfield also enjoys visiting the FDR and MLK Memorials; he has taken out-of-town friends to visit those memorials and plans to continue doing so. The construction of the garden complex would curtail the space available for bicyclists and increase the possibility of collisions, while also detracting from the serenity and isolation of the FDR and MLK memorials. Mr. Crutchfield's aesthetic, recreational, cultural, and communal interests in West Potomac Park therefore are being harmed and will continue to be harmed by Defendants' adoption and implementation of the West Potomac Plan.

119. NPCA member and employee Edward Stierli proposed to his wife in West Potomac Park in 2011. He continues to visit the park several times a year with his family to picnic, walk along the river, and play sports like soccer and frisbee in the open grassy areas, and he plans to continue doing so. Mr. Stierli has also participated in rallies in and around the park both in his personal capacity and in his professional work with NPCA, and he plans to continue doing so. The construction of the garden complex and corresponding reduction or elimination of the open spaces Mr. Stierli has enjoyed for recreational and expressive purposes would detract from his enjoyment of the park. Mr. Stierli's aesthetic, recreational, cultural, and communal interests in West Potomac Park therefore are being harmed and will continue to be harmed by Defendants' adoption and implementation of the West Potomac Plan.

120. Committee of 100 members Jim Dougherty and Paul Edmondson, among other Committee of 100 members, regularly visit West Potomac Park and use and enjoy the park for its recreational, historic, communal, and aesthetic values, and they plan to continue doing so. Their

interests in enjoying these uses therefore are being harmed and will continue to be harmed by Defendants' adoption and implementation of the West Potomac Plan.

121. Plaintiff Steve Longenecker has been playing ultimate frisbee regularly at West Potomac Park for more than a decade and plans to continue doing so.  His daughter, who has a developmental disability, has grown up watching his weekly games from the sidelines and hanging out with other players during breaks in the action.  The construction of the garden complex and corresponding reduction or elimination of space to play ultimate frisbee would force Mr. Longenecker's regular weekly game to other fields—which are not the same quality and lack the convenient parking that allows his daughter to join him at West Potomac Park—or end it altogether.  Mr. Longenecker's aesthetic, recreational, cultural, and communal interests in West Potomac Park therefore are being harmed and will continue to be harmed by Defendants' adoption and implementation of the West Potomac Plan.

122. Plaintiffs face imminent harm from the West Potomac Plan.  Defendants have made a final decision to undertake the plan and to locate the project in West Potomac Park; one of the President's top fundraisers is actively seeking contributions to support its construction; and the President and Secretary of the Interior have publicly shared renderings of the project.

123. The imminence of the harm is heightened because, in the past several months, the Trump administration has repeatedly moved quickly to undertake renovation projects without any notice or opportunity for public comment under processes required by law.

124. In October 2025, despite President Trump's promise that construction of a ballroom would not "interfere with the current building," the administration demolished the East Wing of the White House without advance warning.  Jonathan Edwards & Dan Diamond, *White House Begins Demolishing East Wing Facade to Build Trump's Ballroom*, Wash. Post (Oct. 21, 2025), https://perma.cc/MS3L-97WU.  It then dumped debris from the demolition at East Potomac Golf

33

Course, and the soil later tested positive for lead, chromium, and other toxic metals.  Matthew Daly & Gary Fields, *White House East Wing Debris Dumped at Nearby Golf Course Has Toxic Metals, Report Says*, Wash. Post (May 5, 2026), https://perma.cc/9VQ2-EUXE; Travis Rodgers, *East Wing Debris Dump Leaves Asbestos Questions Unanswered*, Asbestos.com (May 7, 2026), https://perma.cc/KAG8-JY49.

125. In December 2025, after the Kennedy Center board purported to rename the center, President Trump's name was added to the building's facade in just one day.  Darlene Superville, *The Kennedy Center Has Added Trump's Name to the Memorial Congress Created for John F. Kennedy*, AP (Dec. 19, 2025), https://perma.cc/4W5B-7YHZ.  A federal court later concluded that the renaming was unlawful.  *Beatty v. Trump*, No. 25-cv-4480, 2026 WL 1505646, at \*2 (D.D.C. May 29, 2026).

126. In April 2026, the Trump administration abruptly began resurfacing the Lincoln Memorial Reflecting Pool as part of a project to turn the pool "from its longtime gray hue to a swimming pool–like blue."  Rachel Treisman, *Trump's 'American Flag Blue' Reflecting Pool Project Gets a Mixed Reaction in D.C.*, NPR (Apr. 28, 2026), https://perma.cc/F6W8-E8AV.

127. In May 2026, workers suddenly began preliminary surveys and testing at the proposed location of a massive triumphal arch in Memorial Circle, fencing off part of the site.  Gary Fields & Alex Brandon, *Survey Work Begins for Contested Trump Triumphal Arch Project in Washington*, AP (May 11, 2026), https://perma.cc/X446-HLWC.

128. Later in May, the Park Service hastily installed twelve statues depicting Revolutionary War soldiers at Freedom Plaza on Pennsylvania Avenue, as well as another statue of Caesar Rodney, whose statue was taken down in Delaware in the summer of 2020 because of his legacy of enslaving hundreds of people.  Ida Domingo, *Bronze Statues Installed at DC's Freedom Plaza Include Controversial Historical Figure*, 7News (May 27, 2026), https://perma.cc/34P8-4DLN;

34

Dominique Moody, *Statue of Founding Father Who Enslaved Hundreds Installed at Freedom Plaza*, NBC Washington (May 26, 2026), https://perma.cc/6DKA-KHL5.

129. Given the adoption of the West Potomac Plan, work done on it to date, and the administration's track record of beginning overhauls of historic and civic spaces in the nation's capital without warning, Plaintiffs face the prospect that, absent relief, Defendants will take additional steps to further implement their plan to transform West Potomac Park at any time, without prior notice or required legal process.

130. Indeed, the administration admitted as much recently in litigation concerning the construction of a ballroom where the East Wing once stood, asserting that if the administration moves quickly enough to bulldoze a historic site, no one can stop them.  Oral Argument at 16:52, *Nat'l Tr. for Hist. Pres. v. Nat'l Park Serv.*, No. 26-5123 (D.C. Cir. June 5, 2026) ("If the hypothetical is that the White House has already been bulldozed, then I don't think somebody would have standing to object."); *see also id.* at 22:48–23:07 (government counsel responding "I think that's right" to similar question about bulldozing Statue of Liberty).

**CLAIMS FOR RELIEF**

**COUNT I**
**Administrative Procedure Act**
**(Commemorative Works Act)**
**5 U.S.C. § 706(2)(A), (C), (D)**

131. Plaintiffs restate and reallege all paragraphs above as if fully set forth here.

132. Defendants' adoption and implementation of the West Potomac Plan is final agency action subject to judicial review under the APA, *see* 5 U.S.C. § 704, because it "mark[s] the consummation of the agency's decisionmaking process" and is an action "by which rights or obligations have been determined, or from which legal consequences will flow."  *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (internal quotation marks and citations omitted).

35

133. A reviewing court must "hold unlawful and set aside agency action" that is "not in accordance with law," "in excess of statutory jurisdiction, authority, or limitations," or "without observance of procedure required by law."  5 U.S.C. § 706(2)(A), (C), (D).

134. The CWA applies to commemorative works "in areas administered by the National Park Service and the Administrator of General Services in the District of Columbia and its environs."  40 U.S.C. § 8901(4).

135. The CWA prohibits locating new commemorative works within the Reserve.  *Id.* § 8908(c).

136. Defendants' garden complex is a commemorative work within the meaning of the CWA.

137. West Potomac Park is located within the Reserve and is administered by the Park Service.

138. Congress has not authorized construction of the garden complex in West Potomac Park.

139. The CWA also requires that site and design proposals for commemorative works be submitted to the Commission of Fine Arts and the National Capital Planning Commission for approval.  *Id.* § 8905(a)(2).

140. On information and belief, Defendants have not submitted plans for the garden complex to the Commission of Fine Arts or the National Capital Planning Commission.

141. The West Potomac Plan does not comply with the criteria set out in NCPC's 2001 Master Plan.

142. Defendants have not complied with other provisions of the CWA, including the requirements that Congress designate a sponsor to establish a commemorative work, *id.* § 8902(a)(4), that the sponsor consult with the National Capital Memorial Advisory Commission regarding "alternative sites and design concepts," *id.* § 8905(a)(1), and that a commemorative

36

work for an event, an individual, or a group of individuals "may not be authorized until after the 25th anniversary of the event, death of the individual, or death of the last surviving member of the group," *id.* § 8903(c).

143. Accordingly, Defendants' adoption and implementation of the West Potomac Plan is not in accordance with the CWA, exceeds statutory authority, and has been undertaken without observance of procedure required by the CWA, in violation of the APA.

**COUNT II**
**Administrative Procedure Act**
**(40 U.S.C. § 8106)**
**5 U.S.C. § 706(2)(A), (C), (D)**

144. Plaintiffs restate and reallege all paragraphs above as if fully set forth here.

145. Defendants' adoption and implementation of the West Potomac Plan is final agency action subject to judicial review under the APA, *see* 5 U.S.C. § 704, because it "mark[s] the consummation of the agency's decisionmaking process" and is an action "by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett*, 520 U.S. at 178 (internal quotation marks and citations omitted).

146. A reviewing court must "hold unlawful and set aside agency action" that is "not in accordance with law," "in excess of statutory jurisdiction, authority, or limitations," or "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (C), (D).

147. Under 40 U.S.C. § 8106, "[a] building or structure shall not be erected on any reservation, park, or public grounds of the Federal Government in the District of Columbia without express authority of Congress."

148. Defendants' garden complex includes buildings or structures within the meaning of § 8106.

149. Defendants' garden complex itself is a building or structure within the meaning of § 8106.

150. West Potomac Park constitutes a "reservation, park, or public grounds of the Federal Government in the District of Columbia."

151. Congress has not expressly authorized the construction of the garden complex or the buildings and structures that constitute it in West Potomac Park.

152. Accordingly, Defendants' adoption and implementation of the West Potomac Plan is not in accordance with § 8106, exceeds statutory authority, and has been undertaken without observance of procedure required by § 8106, in violation of the APA.

**COUNT III**
**Administrative Procedure Act**
**(National Historic Preservation Act)**
**5 U.S.C. § 706(2)(A), (C), (D)**

153. Plaintiffs restate and reallege all paragraphs above as if fully set forth here.

154. Defendants' adoption and implementation of the West Potomac Plan is final agency action subject to judicial review under the APA, *see* 5 U.S.C. § 704, because it "mark[s] the consummation of the agency's decisionmaking process" and is an action "by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett*, 520 U.S. at 178 (internal quotation marks and citations omitted).

155. A reviewing court must "hold unlawful and set aside agency action" that is "not in accordance with law," "in excess of statutory jurisdiction, authority, or limitations," or "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (C), (D).

156. West Potomac Park is listed on the National Register of Historic Places as part of the East and West Potomac Parks Historic District.

157. Other sites encompassed by West Potomac Park, including the Lincoln Memorial and the Korean War Veterans Memorial, are also listed on the National Register of Historic Places.

158. Defendants' adoption and implementation of the West Potomac Plan is an undertaking with effects on historic property within the meaning of the National Historic Preservation Act. 54 U.S.C. § 306108.

159. Prior to that undertaking, Defendants were required to comply with the NHPA by taking those effects into account, consulting with the public, and affording the Advisory Council on Historic Preservation a reasonable opportunity to comment.  Defendants failed to take those steps and therefore violated the NHPA.

160. Accordingly, Defendants' adoption and implementation of the West Potomac Plan is not in accordance with the NHPA, exceeds statutory authority, and has been undertaken without observance of procedure required by the NHPA, in violation of the APA.

## COUNT IV
### Administrative Procedure Act
### (National Environmental Policy Act)
### 5 U.S.C. § 706(2)(A), (C), (D)

161. Plaintiffs restate and reallege all paragraphs above as if fully set forth here.

162. Defendants' adoption and implementation of the West Potomac Plan is final agency action subject to judicial review under the APA, *see* 5 U.S.C. § 704, because it "mark[s] the consummation of the agency's decisionmaking process" and is an action "by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett*, 520 U.S. at 178 (internal quotation marks and citations omitted).

163. A reviewing court must "hold unlawful and set aside agency action" that is "not in accordance with law," "in excess of statutory jurisdiction, authority, or limitations," or "without observance of procedure required by law."  5 U.S.C. § 706(2)(A), (C), (D).

164. Defendants' adoption and implementation of the West Potomac Plan is a "major Federal action[] significantly affecting the quality of the human environment" within the meaning of the National Environmental Policy Act.  42 U.S.C. § 4332.

39

165. Prior to taking that major federal action, Defendants were required to comply with NEPA by preparing an environmental impact statement or environmental assessment, or by setting forth for public review the basis of any categorical exclusion determination or finding of no significant impact. Defendants failed to take those steps and therefore violated NEPA.

166. Accordingly, Defendants' adoption and implementation of the West Potomac Plan is not in accordance with NEPA, exceeds statutory authority, and has been undertaken without observance of procedure required by NEPA, in violation of the APA.

## COUNT V
### Administrative Procedure Act
### (Organic Act of 1916 and Act of March 3, 1897)
### 5 U.S.C. § 706(2)(A), (C)

167. Plaintiffs restate and reallege all paragraphs above as if fully set forth here.

168. Defendants' adoption and implementation of the West Potomac Plan is final agency action subject to judicial review under the APA, *see* 5 U.S.C. § 704, because it "mark[s] the consummation of the agency's decisionmaking process" and is an action "by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett*, 520 U.S. at 178 (internal quotation marks and citations omitted).

169. A reviewing court must "hold unlawful and set aside agency action" that is "not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. § 706(2)(A), (C).

170. Under the Organic Act of 1916, Defendants are obligated to administer West Potomac Park so as to "conserve the scenery, natural and historic objects, and wild life in the [National Park] System units and to provide for the enjoyment of the scenery, natural and historic objects, and wild life in such manner and by such means as will leave them unimpaired for the enjoyment of future generations." 54 U.S.C. § 100101(a).

40

171. Defendants' adoption and implementation of the West Potomac Plan impairs the enjoyment of the scenery, natural and historic objects, and wildlife of West Potomac Park and fails to leave them unimpaired for the enjoyment of future generations.

172. Defendants' adoption and implementation of the West Potomac Plan likewise violates the congressional mandate that West Potomac Park "be forever held and used as a park for the recreation and pleasure of the people."  Act of Mar. 3, 1897, ch. 375, 29 Stat. 624.

173. Accordingly, Defendants' adoption and implementation of the West Potomac Plan is not in accordance with the Organic Act and the Act of March 3, 1897, and exceeds statutory authority, in violation of the APA.

## COUNT VI
### Administrative Procedure Act
### (Arbitrary and Capricious)
### 5 U.S.C. § 706(2)(A)

174. Plaintiffs restate and reallege all paragraphs above as if fully set forth here.

175. Defendants' adoption and implementation of the West Potomac Plan is final agency action subject to judicial review under the APA, *see* 5 U.S.C. § 704, because it "mark[s] the consummation of the agency's decisionmaking process" and is an action "by which rights or obligations have been determined, or from which legal consequences will flow."  *Bennett*, 520 U.S. at 178 (internal quotation marks and citations omitted).

176. A reviewing court must "hold unlawful and set aside agency action" that is "arbitrary" or "capricious."  5 U.S.C. § 706(2)(A).

177. Defendants' adoption and implementation of the West Potomac Plan was not supported by any satisfactory explanation, substantial evidence, or reasoned basis.  Defendants failed to account for substantial reliance interests and other significant aspects of the problem, including the elimination of park land as a shared recreational asset available to the whole community and adverse effects on historic property and the environment.

41

178. Accordingly, Defendants' adoption and implementation of the West Potomac Plan is arbitrary and capricious, in violation of the APA.

179. To the extent Defendants have failed to observe their own policies and procedures governing the use of funds for projects implicating the parks, that further renders their adoption and implementation of the West Potomac Plan arbitrary and capricious, in violation of the APA.

## COUNT VII
### Ultra Vires

180. Plaintiffs restate and reallege all paragraphs above as if fully set forth here.

181. Plaintiffs have a nonstatutory cause of action to declare unlawful, enjoin, and set aside action that is ultra vires and in excess of legal authority.

182. The West Potomac Plan violates the Commemorative Works Act; 40 U.S.C. § 8106; the National Historic Preservation Act; the National Environmental Policy Act; the Organic Act of 1916; and the Act of March 3, 1897.

183. Defendants have adopted and begun to implement the West Potomac Plan without satisfying these statutory requirements.

184. Defendants' adoption and implementation of the West Potomac Plan without congressional approval and without satisfying procedural obligations is in excess of the powers that Congress has delegated to Defendants and is contrary to specific statutory requirements.

## PRAYER FOR RELIEF

Plaintiffs respectfully request that this Court:

    a. Declare that Defendants' adoption and implementation of the West Potomac Plan violates the Administrative Procedure Act; the Commemorative Works Act; 40 U.S.C. § 8106; the National Historic Preservation Act; the National Environmental Policy Act; the Organic Act of 1916; and the Act of March 3, 1897;

42

b. Set aside and vacate Defendants' adoption and implementation of the West Potomac Plan;

c. Preliminarily and permanently enjoin Defendants from further implementing or giving effect to the West Potomac Plan absent congressional authorization and compliance with all statutory requirements and Park Service practices, policies, and procedures;

d. Pursuant to 5 U.S.C. § 705, stay Defendants' adoption and implementation of the West Potomac Plan;

e. Award Plaintiffs their costs, reasonable attorney fees, and other disbursements deemed appropriate; and

f. Grant such other relief as the Court deems just and proper.


Date: June 15, 2026                                    Respectfully submitted,

*/s/ Michael J. Torcello*
Michael J. Torcello (DC Bar No. 90014480)
Alethea Anne Swift (DC Bar No. 1644929)
Catherine M.A. Carroll (DC Bar No. 497890)
Robin F. Thurston (DC Bar No. 1531399)
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
Phone: (202) 448-9090
Fax: (202) 796-4426
mtorcello@democracyforward.org
aswift@democracyforward.org
ccarroll@democracyforward.org
rthurston@democracyforward.org

*Counsel for Plaintiffs*