**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NATIONAL PARKS CONSERVATION ASSOCIATION, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>DOUG BURGUM, *et al.*,<br><br>*Defendants*. | Civil Action No. 1:26-cv-02103 |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS


INTRODUCTION ..... 1

BACKGROUND ..... 2

I. Factual and Procedural Background ..... 2

A. President Trump Issues and President Biden Revokes the Garden of American Heroes Executive Orders ..... 2

B. After His Reelection, President Trump Again Calls for the Creation of a Garden of American Heroes ..... 4

C. President Trump and Secretary Burgum Post About the Garden of American Heroes on Social Media ..... 5

D. President Trump and Secretary Burgum Speak to the Press About the President's Vision for the Garden of American Heroes ..... 6

E. Plaintiffs Sue to Challenge the Preliminary Concept for the Garden of American Heroes ..... 6

II. Legal Background ..... 7

A. The Commemorative Works Act ..... 7

B. The National Environmental Policy Act ..... 8

C. The National Historic Preservation Act ..... 9

D. The Administrative Procedure Act ..... 9

LEGAL STANDARD ..... 10

I. On a Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(1), Plaintiffs Bear the Burden of Establishing That the Court Has Subject Matter Jurisdiction ..... 10

II. Federal Rule of Civil Procedure 12(b)(6) Requires Plaintiffs to State a Claim to Relief That Is Plausible on Its Face ..... 10

ARGUMEMT ..... 11

I. Plaintiffs Lack Standing to Challenge the Preliminary Concept for the Garden of American Heroes ..... 13

II. Plaintiffs' Challenge to the Preliminary Concept for the Garden of American Heroes Is Not Ripe ........ 18

III. The Preliminary Concept for the Garden of American Heroes Is not an Agency Action Subject to APA Review ........ 21

IV. The Preliminary Concept for the Garden of American Heroes Is not a Final Agency Action Subject to APA Review ........ 23

V. Plaintiffs Cannot Circumvent Statutory Review via an *Ultra Vires* Claim ........ 24

CONCLUSION ........ 26

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abbott Labs v. Garner*,
387 U.S. 136 (1967) ..... 19, 20

*Akinseye v. Dist. of Columbia,*
339 F.3d 970 (D.C. Cir. 2003) ..... 10

*Am. Forest Res. Council v. United States*,
77 F.4th 787 (D.C. Cir. 2023) ..... 22

*Am. Petroleum Inst. v. EPA*,
683 F.3d 382 (D.C. Cir. 2012) ..... 19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..... 10, 11, 15, 16, 22

*Ass'n of Am. Physicians & Surgeons, Inc. v. Schiff*,
23 F.4th 1028 (D.C. Cir. 2022) ..... 12

*Atl. States Legal Found. v. EPA*,
325 F.3d 281 (D.C. Cir. 2003) ..... 20

*Babbitt Auto Parts Co. v. Fleming*,
51 F. Supp. 360 (D.D.C 1941) ..... 14

*Bauxites de Guinee,*
456 U.S. 694 (1982) ..... 10

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ..... 10

*Bennett v. Spear*,
520 U.S. 154 (1997) ..... 23

*City of Alexandria v. Slater*,
198 F.3d 862 (D.C. Cir. 1999) ..... 9

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ..... 14, 17, 18

*Cmtys. for a Better Env't v. EPA*,
748 F.3d 333 (D.C. Cir. 2014) ..... 10

*Common Sense Salmon Recovery v. Evans*,
329 F. Supp. 2d 96 (D.D.C. 2004) ..... 8

*Ctr. for Democracy & Tech. v. Trump*,
507 F. Supp. 3d 213 (D.D.C. 2020) ........ 18

*Davis v. Fed. Election Comm'n*,
554 U.S. 724 (2008) ........ 13

*Delta Air Lines, Inc. v. Export-Import Bank of the U.S.*,
85 F. Supp. 3d 250 (D.D.C. 2015) ........ 21

*Dep't of Com. v. New York*,
588 U.S. 752 (2019) ........ 25

*Devia v. Nuclear Regul. Comm'n*,
492 F.3d 421 (D.C. Cir. 2007) ........ 20

*Doe v. Doe Agency*,
608 F. Supp. 2d 68 (D.D.C. 2009) ........ 18

*Elec. Priv. Info. Ctr. v. FAA*,
892 F.3d 1249 (D.C. Cir. 2018) ........ 17

*Franklin v. Massachusetts*,
505 U.S. 788 (1992) ........ 25

*Fund for Animals v. Williams*,
391 F. Supp. 2d 132 (D.D.C. 2005) ........ 22

*Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*,
460 F.3d 13 (D.C. Cir. 2006) ........ 21, 22

*Gen. Motors Corp. v. EPA,*
363 F.3d 442 (D.C. Cir. 2004) ........ 10

*Giron v. Zeytuna, Inc.*,
597 F. Supp. 3d 29 (D.D.C. 2022) ........ 18

*Glob. Health Council v. Trump*,
153 F.4th 1 (D.C. Cir. 2025) ........ 24

*Grand Lodge of Fraternal Ord. of Police v. Ashcroft*,
185 F. Supp. 2d 9 (D.D.C. 2001) ........ 10

*Gustave–Schmidt v. Chao,*
226 F. Supp. 2d 191 (D.D.C. 2002) ........ 11

*Hearst Radio v. F.C.C.*,
167 F.2d 225 (D.C. Cir. 1948) ........ 22

*Hollingsworth v. Perry*,
570 U.S. 693 (2013) ........ 13

*Indep. Equip. Dealers Ass'n v. EPA*,
372 F.3d 420 (D.C. Cir. 2004) .......... 21, 22, 24

*Karst Env't Educ. & Prot., Inc. v. EPA*,
475 F.3d 1291 (D.C. Cir. 2007) .......... 9

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994) .......... 10

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .......... 14, 16

*Lujan v. Nat'l Wildlife Fed'n*,
497 U.S. 871 (1990) .......... 21

*Marsh v. Oregon Nat. Res. Council*,
490 U.S. 360 (1989) .......... 9

*Murthy v. Missouri*,
603 U.S. 43 (2024) .......... 11

*Nat'l Min. Ass'n v. McCarthy*,
758 F.3d 243 (D.C. Cir. 2014) .......... 23

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
538 U.S. 803 (2003) .......... 18

*Nat'l Parks Conservation Ass'n v. Jewell*,
965 F. Supp. 2d 67 (D.D.C. 2013) .......... 9

*Nat'l Treasury Emps. Union v. United States*,
101 F.3d 1423 (D.C. Cir. 1996) .......... 20

*Newman v. Howard Univ. Sch. of L.*,
715 F. Supp. 3d 86 (D.D.C. 2024) .......... 15, 16, 22

*Nuclear Regul. Comm'n v. Texas*,
605 U.S. 665 (2025) .......... 13, 24, 25

*Nyunt v. Chairman, Broad. Bd. of Governors*,
589 F.3d 445 (D.C. Cir. 2009) .......... 25

*Pharm. Rsch. & Mfrs. of Am. v. Dep't of Health & Hum. Servs.*,
656 F. Supp. 3d 137 (D.D.C. 2023) .......... 14

*POET Biorefining, LLC v. EPA*,
970 F.3d 392 (D.C. Cir. 2020) .......... 19

*Seven Cnty. Infrastructure Coal. v. Eagle Cnty.*,
605 U.S. 168 (2025) .......... 8

*Sierra Club v. FERC*,
153 F.4th 1295 (D.C. Cir. 2025) ........ 8, 15

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ........ 13, 14, 16

*Texas v. United States*,
523 U.S. 296 (1998) ........ 18

*Toilet Goods Ass'n v. Gardner*,
387 U.S. 158 (1967) ........ 20

*Trudeau v. Fed. Trade Comm'n*,
456 F.3d 178 (D.C. Cir. 2006) ........ 22

*Trump v. New York*,
592 U.S. 125 (2020) ........ 14, 21

*Union of Concerned Scientists v. U.S. Dep't of Energy*,
998 F.3d 926 (D.C. Cir. 2021) ........ 14

**Statutes**

40 U.S.C. § 8106, Section 106 ........ 7, 9, 15

40 U.S.C. § 8902(a)(1) ........ 7

40 U.S.C. § 8906(a) ........ 15

5 U.S.C. § 551 ........ 21

5 U.S.C. § 702 ........ 21

5 U.S.C. § 704 ........ 23

5 U.S.C. § 706(2)(A) ........ 9

54 U.S.C. § 300320 ........ 9

54 U.S.C. § 306108 ........ 9, 15

Pub. L. No. 119-21, § 86001, 139 Stat. 72, 356 (2025) ........ 4

Pub. L. No. 99-652, 100 Stat. 3650 (1986) ........ 7

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ........ 10

Federal Rule of Civil Procedure 12(b)(6) ........ 10

**Other Authorities**

Exec. Order No. 13934,
85 Fed. Reg. 41165 (July 3, 2020) ........ 2, 3

Exec. Order No. 13978,
86 Fed. Reg. 6809 (Jan. 18, 2021) .......... 3

Exec. Order No. 14029,
86 Fed. Reg. 27025 (May 14, 2021) .......... 3

Exec. Order No. 14189,
90 Fed. Reg. 8849 (Jan. 29, 2025) .......... 4

## INTRODUCTION

Several months ago, Doug Burgum, Secretary of the Department of the Interior, tweeted about a potential National Garden of American Heroes ("Garden"), a proposed statue garden celebrating historically significant Americans, and spoke briefly to the press about President Trump's "vision" for the Garden. That "vision" is still a preliminary concept: Plaintiffs do not allege that there are blueprints for the Garden, that there is an agency decision document approving a design for the Garden, that there is an agency decision document authorizing construction of the Garden, or that construction has begun. Nor do Plaintiffs allege when construction will begin. Nevertheless, Plaintiffs claim the preliminary concepts for the Garden must be vacated under the Administrative Procedure Act ("APA") and Defendants must be enjoined from pursuing those concepts because they have not yet been through various administrative approval processes.

Multiple doctrines bar Plaintiffs' suit. Plaintiffs lack standing because they cannot show an actual or imminent injury from Secretary Burgum's statements or a preliminary concept that has not been implemented. And Plaintiffs cannot allege informational and procedural harms from Defendants' failure to meet statutory obligations that are not yet applicable and that Defendants will satisfy, if and when those statutory obligations become applicable. For similar reasons, Plaintiffs' claims are not ripe. The APA also excludes Secretary Burgum's statements and the preliminary concepts for the Garden from the definition of agency action subject to judicial review. Further, the preliminary concepts for the Garden are not sufficiently "final" to be subject to review under the APA. There will be no final agency action until Defendants issue a final agency decision document authorizing construction of the Garden. Finally, Plaintiffs cannot take a shortcut past the APA's requirements by asserting an *ultra vires* claim when APA review will be available if

any plan for the Garden is finalized and construction is authorized. The Court should dismiss Plaintiffs' Complaint.

## BACKGROUND

### I. Factual and Procedural Background

#### A. President Trump Issues and President Biden Revokes the Garden of American Heroes Executive Orders

On July 3, 2020, President Trump signed an Executive Order titled "Building and Rebuilding Monuments to American Heroes." Exec. Order No. 13934, 85 Fed. Reg. 41165 (July 3, 2020). In that Order, President Trump noted monuments' virtues as "silent teachers" that "express our noblest ideals: respect for our ancestors, love of freedom, and striving for a more perfect union." *Id.* § 1. And he decried the then-recent destruction, vandalization, and removal of monuments, including "monuments to Christopher Columbus, George Washington, Thomas Jefferson, Benjamin Franklin, Francis Scott Key, Ulysses S. Grant, leaders of the abolitionist movement, the first all-volunteer African American regiment of the Union Army in the Civil War, and American soldiers killed in the First and Second World Wars." *Id.* To combat the "assault on our collective national memory," President Trump created a Task Force for Building and Rebuilding Monuments to American Heroes. *Id.* §§ 1-2. The Task Force's duty was to present options to the President for the construction of a National Garden of American Heroes, which would include statues of "historically significant Americans" like Susan B. Anthony, Frederick Douglass, Alexander Hamilton, Audie Murphy, Jackie Robinson, and the Wright Brothers. *Id.* §§ 3(c)(i), 7. The President recognized that none of those commemorated in the Garden "will have lived perfect lives," but required that all "be worth honoring, remembering, and studying." *Id.* § 3(c)(iii). Under the Order, the Garden would be placed "on a site of natural beauty that enables

visitors to enjoy nature, walk among the statues, and be inspired to learn about great figures of America's history." *Id.* § 3(c)(v). And President Trump directed that the Garden "should be opened for public access prior to the 250th anniversary of the proclamation of the Declaration of Independence on July 4, 2026." *Id.* § 3(c)(ii).

In January 2021, President Trump signed a follow-on Executive Order titled "Building the National Garden of American Heroes." Exec. Order No. 13978, 86 Fed. Reg. 6809 (Jan. 18, 2021). That Order expanded the list of historically significant Americans who would be represented in the Garden. *Id.* § 3. The expanded list celebrates American diversity and the breadth of American achievements, honoring men and women of different races, from different eras, who contributed to the nation across a wide range of endeavors. *Id.* The Order directed the Secretary of the Interior to provide funding for the Garden, identify a suitable site for the Garden, and to proceed with construction of the Garden. *Id.* §§ 4-5. The Order directed the chairs of the National Endowment for the Arts and the National Endowment for the Humanities to provide funding for the "commissioning [of] statues." *Id.* § 5(b). And the Order directed the Task Force to provide an annual public report detailing progress made toward establishing the Garden. *Id.* § 6.

On May 14, 2021, President Biden rescinded both Executive Orders related to the Garden. Exec. Order No. 14029, 86 Fed. Reg. 27025 (May 14, 2021). The Biden Executive Order does not explain his reasoning for the recissions. *Id.*

### B. After His Reelection, President Trump Again Calls for the Creation of a Garden of American Heroes

Nine days after being inaugurated President for the second time, President Trump issued an executive order titled "Celebrating America's 250th Birthday." Exec. Order No. 14189, 90 Fed. Reg. 8849 (Jan. 29, 2025). The Order's purpose was "to provide a grand celebration worthy of the momentous occasion of the 250th anniversary of American Independence" and "to take other actions to honor the history of our great Nation." *Id.* § 1. Among other things, the Order reinstated both of President Trump's prior Executive Orders related to the Garden and called on the Assistant to the President for Domestic Policy to propose "additional historically significant Americans for inclusion" in the Garden, "bring[ing] the total number of heroes to 250." *Id.* § 3(b). The Order also changed the deadline for a public opening of the Garden from July 4, 2026, to "as expeditiously as possible." *Id.* § 3(c).

Following the Presidents' Executive Order, the National Endowment for the Humanities "announced a grant program to support the garden, requesting 'preliminary concepts' for statues and offering awards of up to $200,000 per statue." Compl. ¶ 81. Congress subsequently "appropriated $40 million to the NEH, to remain available through fiscal year 2028, 'for the procurement of statues'" for the Garden. *Id.* ¶ 84 (quoting Pub. L. No. 119-21, § 86001, 139 Stat. 72, 356 (2025)). Plaintiffs allege a private fundraiser—the National Garden of American Heroes Foundation—has also solicited donations to fund the Garden. *Id.* ¶¶ 93-98. The fundraiser's solicitations include artistic renderings of a potential Garden. *Id.* ¶ 96.

### C. President Trump and Secretary Burgum Post About the Garden of American Heroes on Social Media

On May 15, 2026, President Trump posted on Truth Social that the Garden would be "located in West Potomac Park." Compl. ¶ 100. The President included a similar artistic rendering of a potential Garden as the National Garden of American Heroes Foundation's fundraising solicitation:

Donald J. Trump
@realDonaldTrump

I am proud to announce the site of the NATIONAL GARDEN OF AMERICAN HEROES. This magnificent exhibition of statues will be located in West Potomac Park, which we are transforming into one of the World's most beautiful public spaces. Right now, it is a totally BARREN field of Prime Waterfront Real Estate along our Mighty Potomac River. When finished, West Potomac Park will be a World Class Masterpiece with elegant Landscaping, and adorned with Beautiful Statues, and be yet another one of my great projects to make Washington, D.C., the Safest and Most Beautiful Capital in the World. The National Garden of American Heroes will feature the MOST BEAUTIFUL collection of statues of AMERICAN HEROES, featuring our Illustrious Founding Fathers, Military Warriors, Religious Leaders, Civil Rights Champions, World Class Athletes, Artists, Entertainers, and MORE. The people of America (and the World!) will come here to learn and be inspired by the "Greats". The National Garden of American Heroes is one more project we are undertaking to honor the 250th Birthday of the Greatest Nation on Earth, THE UNITED STATES OF AMERICA! President DONALD J. TRUMP



**4.97k** ReTruths **20.1k** Likes May 15, 2026, 4:52 AM

Compl. ¶¶ 100-01. *See also id.* ¶ 96. The President did not provide a timeline for the project. *Id.* ¶¶ 100-01.

Later that day, Secretary Burgum posted the same photo on X with the caption "As America approaches its 250th birthday, @POTUS is continuing to honor our nation's legacy with the National Garden of American Heroes, a landmark in Washington, D.C. that will be enjoyed for generations to come." Compl. ¶ 102 (citation modified). Secretary Burgum did not provide a timeline for the project. *Id.*

### D. President Trump and Secretary Burgum Speak to the Press About the President's Vision for the Garden of American Heroes

On June 4, President Trump met with the press to announce a $700 million investment in the clean coal industry intended to increase the supply of affordable energy. *President Trump Announces $700 Million for Coal Industry* (C-SPAN, June 4, 2026), https://www.c-span.org/program/white-house-event/president-trump-makesannouncement-on-clean-coal/680441 (cited by Compl. ¶¶ 106-09). As an aside, President Trump asked Secretary Burgum "how are you doing" on various "projects that we're just starting," including the Garden. *Id.* at 22:00-24:10. Secretary Burgum responded by describing "the vision [the President] has for these projects." *Id.* at 24:10-26:07. Secretary Burgum did not provide a timeline for any of the projects and did not describe any of the projects beyond their general features. *Id.*

### E. Plaintiffs Sue to Challenge the Preliminary Concept for the Garden of American Heroes

On June 15, 2026, a month after Secretary Burgum's post on X and two weeks after his comments to the press, Plaintiffs sued Secretary Burgum, the Department of the Interior, Jessica Bowron, and the National Park Service. *See generally* Compl. Plaintiffs allege Secretary Burgum's post and comments to the press are evidence of a "West Potomac Plan"—a term

Plaintiffs invented—and Plaintiffs contend that "Plan" is a final agency action subject to review under the APA. *Id.* ¶¶ 4, 100-03, 132. Plaintiffs contend that "Defendants made a final decision to adopt the West Potomac Plan no later than May 15, 2026," citing only the President's social media post as support for this statement. *Id.* ¶¶ 100-101. Plaintiffs allege Defendants have harmed their informational and procedural interests by not following procedures required by the Commemorative Works Act ("CWA"), Section 106 of the National Historic Preservation Act ("NHPA), and the National Environmental Policy Act ("NEPA") before adopting the alleged "Plan." *Id.* ¶¶ 8, 111. And Plaintiffs allege construction of the Garden in West Potomac Park under the so-called "West Potomac Plan" would harm their "historic, aesthetic, recreational, and other interests." *Id.* ¶ 8. Plaintiffs press six claims for relief under the APA. *Id.* ¶¶ 131-79. Plaintiffs allege the "West Potomac Plan" is arbitrary and capricious and contrary to the CWA, 40 U.S.C. § 8106, Section 106 of the NHPA, NEPA, the National Park Service's Organic Act. *Id.* Plaintiffs also press an *ultra vires* claim. *Id.* ¶¶ 180-84.

## II. Legal Background

### A. The Commemorative Works Act

The CWA sets forth procedures for building commemorative works in certain areas of the District of Columbia. Pub. L. No. 99-652, 100 Stat. 3650 (1986), codified at 40 U.S.C. ch. 89. The CWA applies to commemorative works "designed to perpetuate in a permanent manner the memory of an individual, group, event or other significant element of American history, except that the term does not include any such item which is located within the interior of a structure or a structure which is primarily used for other purposes." 40 U.S.C. § 8902(a)(1).

Before a sponsor of a commemorative work can apply to the Secretary of the Interior for a construction permit, the sponsor of the commemorative work "must consult with the National

Capital Memorial Advisory Commission regarding the selection of alternative sites and design concepts for the commemorative work." *Id.* § 8905(a)(1). "[S]ite and design proposals" must also be submitted "to the Commission of Fine Arts and the National Capital Planning Commission for their approval." *Id.* § 8905(a)(2).

"Before issuing a permit for the construction of a commemorative work in the District of Columbia and its environs, the Secretary of the Interior" must determine that (i) "the National Capital Planning Commission and the Commission of Fine Arts" have approved the site and design; (ii) "knowledgeable individuals qualified in the field of preservation and maintenance have been consulted to determine structural soundness and durability of the commemorative work and to ensure that the commemorative work meets high professional standards"; (iii) "the sponsor authorized to construct the commemorative work has submitted contract documents for construction of the commemorative work to the Secretary"; and (iv) "the sponsor authorized to construct the commemorative work has available sufficient amounts to complete construction of the project." *Id.* § 8906(a).

**B. The National Environmental Policy Act**

NEPA "requires agencies to prepare" reports on the environmental effects of "major federal action[s]" before "they approve" of such major federal actions. *Sierra Club v. FERC*, 153 F.4th 1295, 1303 (D.C. Cir. 2025). But NEPA "does not mandate particular results." *Seven Cnty. Infrastructure Coal. v. Eagle Cnty.*, 605 U.S. 168, 177 (2025) (citation omitted). NEPA prescribes a process to ensure that federal decision-makers consider, and that the public is informed about, potential environmental consequences of proposed projects. *Id.* Proposed projects that do not qualify as "major Federal action[s]" do not require NEPA compliance. *Common Sense Salmon Recovery v. Evans*, 329 F. Supp. 2d 96, 105 (D.D.C. 2004).

### C. The National Historic Preservation Act

Like NEPA, Section 106 of the NHPA is "essentially a procedural statute" that does not impose substantive standards but "requires that agencies 'take into account the effect of [an] undertaking on any district, site, building, structure, or object that is included in or eligible for inclusion in the National Register [of Historic Places].'" *City of Alexandria v. Slater*, 198 F.3d 862, 871 (D.C. Cir. 1999) (alteration in original) (citing 16 U.S.C. § 470f (1999), *recodified at* 54 U.S.C. § 306108). An undertaking is any "project, activity, or program funded in whole or in part under the direct or indirect jurisdiction of a Federal agency." 54 U.S.C. § 300320. The statue requires compliance with Section 106's procedural requirements "prior to the approval of the expenditure of any Federal funds on the undertaking or prior to the issuance of any license." 54 U.S.C. § 306108.

### D. The Administrative Procedure Act

The CWA, 40 U.S.C. § 8106, NEPA, the NHPA, and the National Park Service's Organic Act do not provide a private right of action and thus the APA governs any judicial review. *See Karst Env't Educ. & Prot., Inc. v. EPA*, 475 F.3d 1291, 1295 (D.C. Cir. 2007). The APA authorizes a reviewing court to "hold unlawful and set aside" final agency actions found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Marsh v. Oregon Nat. Res. Council*, 490 U.S. 360, 378 (1989). Under this standard, the scope of review is narrow, based on the agency's record, and a court should not substitute its judgment for that of the agency. *Nat'l Parks Conservation Ass'n v. Jewell*, 965 F. Supp. 2d 67, 73-74 (D.D.C. 2013). When undertaking the arbitrary and capricious review, a court is to "give an extreme degree of deference to the agency when it is evaluating scientific data within its

technical expertise." *Cmtys. for a Better Env't v. EPA*, 748 F.3d 333, 336 (D.C. Cir. 2014) (citations omitted).

## LEGAL STANDARD

### I. On a Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(1), Plaintiffs Bear the Burden of Establishing That the Court Has Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction, and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA,* 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction."). "[B]ecause subject-matter jurisdiction is an 'Art. III as well as a statutory requirement, . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. Dist. of Columbia,* 339 F.3d 970, 971 (D.C. Cir. 2003) (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702 (1982)). On a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of establishing by a preponderance of the evidence that the Court has subject matter jurisdiction. *Grand Lodge of Fraternal Ord. of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).

### II. Federal Rule of Civil Procedure 12(b)(6) Requires Plaintiffs to State a Claim to Relief That Is Plausible on Its Face

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified); *accord Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556

U.S. at 678. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation modified). A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In deciding a motion to dismiss, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave–Schmidt v. Chao,* 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citations omitted). The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (citation omitted).

## ARGUMENT

The bulk of Plaintiffs' allegations concern non-parties to this case, including President Trump, the National Endowment for the Humanities, and an alleged private fundraiser for the Garden. These allegations, of course, shed no light on whether Defendants have violated the statutes that Plaintiffs' claims rely on, and they in no way suggest that Defendants' actions have harmed Plaintiffs. These allegations are thus irrelevant to the merits of Plaintiffs' claims and to Plaintiffs' standing.

The Complaint includes zero allegations regarding the National Park Service's involvement in the alleged plan for the Garden and zero allegations regarding Jessica Bowron's involvement in the alleged plan. *See* Compl. "Because standing is not dispensed in gross," plaintiffs must prove facts supporting each element of standing "for each claim that they press against each defendant and for each form of relief that they seek." *Murthy v. Missouri*, 603 U.S. 43, 44 (2024) (citation omitted). Since Plaintiffs have not alleged "a causal link between" their

alleged injuries and any action taken by the National Park Service or Bowron, Plaintiffs' claims against those Defendants must be dismissed for lack of standing. *Ass'n of Am. Physicians & Surgeons, Inc. v. Schiff*, 23 F.4th 1028, 1034 (D.C. Cir. 2022).

The only allegations regarding Secretary Burgum's or the Department of the Interior's involvement in the Garden are (i) the Secretary's social media post stating "@POTUS is continuing to honor our nation's legacy with the National Garden of American Heroes," Compl. ¶¶ 102-03, and (ii) Secretary Burgum's comments at a press conference generally describing the Garden and other projects the administration is "just starting," *President Trump Announces*, at 22:00–26:07 (cited at Compl. ¶¶ 106-09). But Plaintiffs cannot maintain this lawsuit based on the allegations regarding Secretary Burgum's statements.

First, this Court lacks subject matter jurisdiction. Secretary Burgum's public statements have not harmed Plaintiffs. Even if the Court construes those statements as evidence of the alleged "West Potomac Plan," Plaintiffs cannot show a present or imminent injury from a mere "plan." Plaintiffs cite no agency decision document adopting or implementing the alleged "Plan," and Plaintiffs cannot allege an actual or imminent harm from a preliminary concept. Plaintiffs also cannot allege procedural harms based on Defendants' not completing the procedures required by the CWA, Section 106 of the NHPA, or NEPA before speaking about the Garden or developing a preliminary concept for the Garden because Defendants are only required to comply with those procedures before final authorization of projects. Without an actual or imminent harm, Plaintiffs lack standing, their lawsuit is not ripe, and their Complaint must be dismissed under Rule 12(b)(1).

Second, Plaintiffs fail to state a claim under the APA. Secretary Burgum's public statements are not "agency actions"—much less final agency actions—under the APA. And even if the Court construes those statements as evidence of the alleged "West Potomac Plan," a mere

plan is still neither "agency action" nor "final" under the APA: A plan does not determine anyone's rights or obligations, and a plan marks the beginning, not the end, of an agency's decision-making process. Plaintiffs' APA claims must be dismissed under Rule 12(b)(6).

Finally, Plaintiffs cannot circumvent APA review by pressing an *ultra vires* claim. *Ultra vires* review is "unavailable if, as is usually the case, a statutory review scheme provides aggrieved persons with a meaningful and adequate opportunity for judicial review." *Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665, 681 (2025) ("*NRC*") (citation omitted). If and when Defendants take a final agency action on construction of the Garden, their decision would be subject to judicial review under the APA, which would provide "a meaningful and adequate opportunity for judicial review." *Id.* (citation omitted). Separately, Plaintiffs have not plausibly alleged that Defendants have "taken action entirely in excess of [their] delegated powers." *Id.* (citation omitted). Because *ultra vires* review is unavailable, and because Plaintiffs have not plausibly satisfied the high standard for *ultra vires* review, the Court should dismiss Plaintiffs' *ultra vires* claim under Rule 12(b)(6).

### I. Plaintiffs Lack Standing to Challenge the Preliminary Concept for the Garden of American Heroes

To demonstrate standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Plaintiffs have the burden of establishing all three elements for every claim. *Id.* Standing must exist "when the suit was filed," *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008), and must "persist throughout all stages of litigation," *Hollingsworth v. Perry*, 570 U.S. 693, 705 (2013).

To establish an injury in fact, Plaintiffs must show they suffered "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). The injury must be "*certainly* impending," and "[a]llegations of *possible* future injury" fail to establish standing. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation omitted).

When conducting a standing analysis, courts do not speculate about "how the Executive Branch might eventually implement" a Presidential desire. *Trump v. New York*, 592 U.S. 125, 131 (2020). Further, the D.C. Circuit has "been reluctant to find standing based on predictions of how agencies will exercise discretion in future proceedings." *Union of Concerned Scientists v. U.S. Dep't of Energy*, 998 F.3d 926, 930 (D.C. Cir. 2021). Indeed, "judicial experience and common sense teach that the outcome of a complex bureaucratic process"—even when the President has given specific directions to an agency—"is difficult to predict" because "expectations may be wrong, and intentions may change." *Pharm. Rsch. & Mfrs. of Am. v. Dep't of Health & Hum. Servs.*, 656 F. Supp. 3d 137, 152 (D.D.C. 2023) (citation omitted).

As an initial matter, Plaintiffs have not been harmed by Secretary Burgum's social media post and remarks to the press about the Garden. Compl. ¶¶ 100-09. "It is generally recognized that bulletins and releases issued by a governmental agency do not in themselves give rise to a justiciable controversy." *Babbitt Auto Parts Co. v. Fleming*, 51 F. Supp. 360, 361 (D.D.C 1941). "Unless and until the defendants take such action as would present a concrete issue, it would be both difficult and improper for judicial power here to intervene." *Id.* at 362.

Nor do Plaintiffs allege procedural injuries based on Defendants' alleged failures to follow the CWA's, NEPA's, and Section 106 of the NHPA's processes before publicly commenting on the

Garden, Compl. ¶¶ 8, 102-03, 106-09. The CWA requires the Secretary of the Interior to determine that "the National Capital Planning Commission and the Commission of Fine Arts" have approved the site and design "before issuing a permit for the construction of a commemorative work in the District of Columbia." 40 U.S.C. § 8906(a). Agencies must comply with NEPA "when they approve a major federal action" *Sierra Club*, 153 F.4th at 1303 (citation omitted). Section 106 of the NHPA requires federal agencies to "take into account the effect of the undertaking on any historic property" "prior to the approval of the expenditure of any Federal funds on the undertaking or prior to the issuance of any license. 54 U.S.C. § 306108. But Plaintiffs do not allege Defendants have issued a permit for the Garden, authorized construction of the Garden through an agency decision document, or approved the expenditure of federal funds to construct the Garden. And because planning for the Garden is "just starting" and the project is still a preliminary concept, it is impossible for Defendants to assess what the effects of the Garden will be or initiate the procedures required by the CWA, Section 106 of the NHPA, or NEPA. *President Trump Announces* at 22:00–26:07 (cited at Compl. ¶¶ 106-09). Because Plaintiffs' fail to allege Defendants have issued a permit for construction of the Garden or any other final agency decision document approving the Garden's design or construction, Plaintiffs fail to allege the procedural requirements of the CWA, NEPA, or Section 106 of the NHPA have attached and fail to allege the invasion of any legally protected right.

Although Plaintiffs' claims for relief assert that "Defendants' adoption and implementation of the West Potomac Plan is final agency action subject to judicial review under the APA[,]" Compl. ¶¶ 132, 145, 154, 162, 168, 175, the Court must disregard that legal conclusion. *See Iqbal*, 556 U.S. at 678. Indeed, no factual allegations support this legal conclusion, and Plaintiffs rely only on "conclusory allegations" and "legal assertions." *Newman v. Howard Univ. Sch. of*

*L.*, 715 F. Supp. 3d 86, 111 (D.D.C. 2024) (citing *Iqbal*, 556 U.S. at 678). Plaintiffs never identify any agency decision document adopting the alleged plan, only social media posts and public remarks. *See generally* Compl. Nor do Plaintiffs allege any agency action taken to implement the alleged plan beyond the social media posts and public remarks. *See generally id.* The Court should reject Plaintiffs' "conclusory allegations" and "legal assertions" that Defendants have adopted or implemented the alleged "West Potomac Plan." *Newman*, 715 F. Supp. 3d at 111 (citing *Iqbal*, 556 U.S. at 678).

Showing just how farfetched their claims are, Plaintiffs seem to allege a risk of future procedural harms based on anticipatory violations of the CWA, NEPA, Section 106 of the NHPA, and the APA. *See* Compl. ¶ 129. That speculation is rebutted by a document Plaintiffs rely on in their Complaint: "White House officials have previously said they will follow 'all legal requirements and approvals' for the planned garden." Dan Diamond, *Trump Announces Planned D.C. Site for Massive Sculpture Garden*, Wash. Post (May 15, 2026), https://perma.cc/L3MY-WN9P (cited at Compl. ¶ 104). And we are unaware of any case that has found an Article III injury based on the risk of a future procedural violation.

Finally, because construction has not begun and Plaintiffs cannot say when construction will begin, Plaintiffs cannot show concrete or imminent harm from construction of the Garden. An injury in fact, must be "actual or imminent, not conjectural or hypothetical." *Spokeo*, 578 U.S. at 339 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Plaintiffs' alleged aesthetic and recreational injuries flow from an alleged potential "reduction" in open space, in undefined areas of West Potomac Park, that Plaintiffs speculate "would detract" from or prohibit Plaintiffs' planned activities in the park. Compl. ¶¶ 118-21. But at this point the Garden is only an idea by the Executive Branch—an idea Secretary Burgum shared online and discussed with

the press. Compl. ¶¶ 102, 108-09. Plaintiffs provide no timeline for when an agency decision document authorizing construction of the Garden will be issued or when construction on the Garden will begin. *See* Compl. ¶¶ 100-09. Even President Trump, who had the idea for the Garden, described it in June as a "project[] that we're just starting." *President Trump Announces* at 22:00-24:10 (cited at Compl. ¶¶ 106-09). Plaintiffs have not alleged and cannot allege Defendants have analyzed, adopted, or taken any concrete steps to implement the alleged plan for the Garden in a manner that will cause imminent injury.

Worse yet, Plaintiffs can only speculate about the ultimate design and scope of the Garden and whether it might interfere with their planned activities in West Potomac Park. Although Plaintiffs allege an architect was hired "to advise on the project" in April 2026, Plaintiffs do not allege the architect has produced any work, much less that those plans have been finalized or approved. Compl. ¶ 87. Plaintiffs identify no blueprints or other plans for the Garden produced by Defendants, so even if Defendants were to issue an agency decision document authorizing construction of the Garden, the Garden's potential future effect on West Potomac Park is unknown at this stage. Plaintiffs cannot say how large the Garden will be, whether the Garden will reduce open space in the areas of the Park they plan to visit, what, if any, structures will be included in the Garden, where the statues will be sited, what the environmental impacts of the Garden will be, or whether the Garden will or will not affect nearby historic properties. Any potential future aesthetic or recreational injuries are "too speculative to support standing." *Elec. Priv. Info. Ctr. v. FAA*, 892 F.3d 1249, 1255 (D.C. Cir. 2018).

At bottom, Plaintiffs' alleged harms from the potential construction of the Garden rest on a "speculative chain of possibilities" that does not establish that their potential injury is "certainly impending." *Clapper*, 568 U.S. at 414. Defendants *might* develop a design for the Garden;

Defendants *might* issue an agency decision document approving a design for the Garden; Defendants *might* issue an agency decision document authorizing construction of the Garden; Defendants *might* disregard the procedures required by the CWA, Section 106 of the NHPA, or NEPA before finally approving the Garden; and construction of the Garden *might* detract from activities such as bicycling and ultimate frisbee in the park. "If such speculative future government action could support an injury in fact, it is hard to imagine what would *not* satisfy that requirement." *Ctr. for Democracy & Tech. v. Trump*, 507 F. Supp. 3d 213, 223 (D.D.C. 2020). Plaintiffs have not met their burden to show that injurious construction is, not probably, but "*certainly* impending." *Clapper*, 568 U.S. at 409 (citation omitted).

## II. Plaintiffs' Challenge to the Preliminary Concept for the Garden of American Heroes Is Not Ripe

"A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Doe v. Doe Agency*, 608 F. Supp. 2d 68, 72 (D.D.C. 2009) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). "Ripeness is a justiciability doctrine designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807–08 (2003) (citation omitted). Ripeness has two facets: constitutional, which asks whether a plaintiff has alleged an injury sufficient to invoke subject-matter jurisdiction, and prudential, which "concerns the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Giron v. Zeytuna, Inc.*, 597 F. Supp. 3d 29, 54 (D.D.C. 2022) (citation omitted).

"Constitutional ripeness is subsumed into the Article III requirement of standing, which requires a petitioner to allege *inter alia* an injury-in-fact that is imminent or certainly impending." *POET Biorefining, LLC v. EPA*, 970 F.3d 392, 403 (D.C. Cir. 2020) (citation omitted). As explained above, *supra* Argument § I, Plaintiffs' alleged injuries tied to the construction of the Garden are neither imminent nor certainly impending. Although Plaintiffs cite social media posts and public remarks describing President Trump's intent to site the Garden in West Potomac Park, *see* Compl. ¶¶ 100-109, they do not allege that Defendants have issued an agency decision document setting the location and design for the Garden, that Defendants have issued an agency decision document authorizing construction of the Garden, or that construction activities are imminent. And Plaintiffs cannot allege informational and procedural harms from Defendants disregarding statutes they have not yet violated and that they have committed to satisfying, if and when those statutory requirements become applicable. *See Trump Announces Planned D.C. Site for Massive Sculpture Garden*, Wash. Post (May 15, 2026), https://perma.cc/L3MY-WN9P (cited at Compl. ¶ 104). Plaintiffs' injuries are neither imminent nor certainly impending, as required to establish Article III jurisdiction. Accordingly, this case is constitutionally unripe.

The Court should also decline to review this dispute on prudential grounds. "[T]he doctrine of prudential ripeness ensures that Article III courts make decisions only when they have to, and then, only once." *Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 387 (D.C. Cir. 2012). In evaluating ripeness, courts look to "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs v. Garner*, 387 U.S. 136, 149 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). Under the fitness prong, courts must consider "[1] whether [the claim] is purely legal, [2] whether consideration of the issue would benefit from a more concrete setting, and [3] whether the agency's action is sufficiently final."

*Atl. States Legal Found. v. EPA*, 325 F.3d 281, 284 (D.C. Cir. 2003) (citation omitted). For the hardship prong, courts must ask whether the challenged administrative action is likely to have a direct and immediate effect on the "primary conduct" of the plaintiff. *Toilet Goods Ass'n v. Gardner*, 387 U.S. 158, 164 (1967). Here, Plaintiffs fail to establish prudential ripeness under both prongs of the test.

Plaintiffs' claims are not fit for review. The claims are not purely legal as they hinge on the design of the Garden (which has not been finalized by Defendants), the construction of the Garden (which has not been authorized by Defendants), and on the unfounded assumption that construction will begin without the necessary reviews and approvals. Waiting for the design, planning, and compliance processes to play out would provide a more concrete setting for judicial review. *See Devia v. Nuclear Regul. Comm'n*, 492 F.3d 421, 424 (D.C. Cir. 2007) ("[W]hen an agency decision may never have 'its effects felt in a concrete way by the challenging parties,' the prospect of entangling ourselves in a challenge to such a decision is an element of the fitness determination as well." (quoting *Abbott Labs*, 387 U.S. at 148–49)). Because Plaintiffs have not alleged that Defendants have taken any action with respect to the Garden that is sufficiently final to cause an imminent or certainly impending injury, the Court should reject their claims as unripe. *See Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1431 (D.C. Cir. 1996) ("[T]he usually unspoken element of the rationale underlying the ripeness doctrine: [i]f we do not decide it now, we may never need to.").

As to the hardship prong, Plaintiffs suffer no hardship from deferred judicial review, as they can proceed with claims challenging any final agency action with which they disagree, if and when Defendants authorize a final project to proceed. "If the only hardship a plaintiff will endure as a result of delaying consideration of the disputed issue is the burden of having to engage in

another suit, this will not suffice to overcome an agency's ripeness challenge." *Delta Air Lines, Inc. v. Export-Import Bank of the U.S.*, 85 F. Supp. 3d 250, 272–73 (D.D.C. 2015) (citation omitted). Moreover, "plaintiffs suffer no concrete harm from the challenged [Presidential desire] itself, which does not require them 'to do anything or to refrain from doing anything.'" *New York*, 592 U.S. at 134 (citation omitted).

In sum, Plaintiffs' claims are constitutionally and prudentially unripe, given the lack of an actual or imminent injury, the fact that the issues would benefit from further factual development before undergoing judicial review, and the lack of harm to Plaintiffs from withholding review until the factual circumstances surrounding the hypothetical project are more developed.

## III. The Preliminary Concept for the Garden of American Heroes Is not an Agency Action Subject to APA Review.

APA review is limited to the review of "agency action." 5 U.S.C. § 702. The term "'agency action' includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551 (13). Because the definition of "agency action" is limited, courts do not "exercise judicial review over everything done by an administrative agency." *Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 427 (D.C. Cir. 2004) (Roberts, J.) (citation omitted); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 899 (1990) ("The APA does not authorize "general judicial review of the [agency's] day-to-day operations"). "Agencies prepare proposals, conduct studies, meet with members of Congress and interested groups, and engage in a wide variety of activities that comprise the common business of managing government programs," none of which constitutes agency action subject to APA review. *Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 20 (D.C. Cir. 2006). Instead, "[a]n

'agency action' is an agency's determination of rights and obligations." *Am. Forest Res. Council v. United States*, 77 F.4th 787, 804 (D.C. Cir. 2023).

The APA's "definition of 'agency action' . . . obviously does not cover an act such as the publication of" Secretary Burgum's social media post or remarks to the press. *Hearst Radio v. F.C.C.*, 167 F.2d 225, 227 (D.C. Cir. 1948); *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 189 (D.C. Cir. 2006) ("[W]e have never found a press release of the kind at issue here to constitute 'final agency action' under the APA."). Secretary Burgum's public statements did not "determine[e]" anyone's "rights or obligations," *Am. Forest*, 77 F.4th at 804; they merely apprised the public of the President's "vision" for the Garden, *President Trump Announces* at 24:10-26:07 (cited at Compl. ¶¶ 106-09). Announcing "goals" is not an agency action under the APA. *Fund for Animals v. Williams*, 391 F. Supp. 2d 132, 139 (D.D.C. 2005)

Nor is the supposed "West Potomac Plan" an "agency action" subject to APA review. The Court need not accept Plaintiffs' "conclusory allegations" that such a plan exists when Plaintiffs fail to cite a design document for the Garden, an agency decision document approving a design for the Garden, or an agency decision document approving construction of the Garden. *Newman*, 715 F. Supp. 3d at 111 (citing *Iqbal*, 556 U.S. at 678). In all events, a plan does not "impos[e] any obligation, deny[] any right, or fix[] any legal relationship." *Indep. Equip. Dealers*, 372 F.3d at 427 (citation omitted). *See also Fund for Animals*, 391 F. Supp. 2d at 137 ("[T]he Strategic Plan does not constitute a judicially reviewable final action."). Rather, "[p]reparing" a plan is part of "the common business of managing government programs" that is not subject to APA review. *Fund for Animals*, 460 F.3d at 20. The Court should dismiss Plaintiffs' APA claims under Rule 12(b)(6).

### IV. The Preliminary Concept for the Garden of American Heroes Is not a Final Agency Action Subject to APA Review.

Judicial review under the APA is limited to challenges to "final agency action." 5 U.S.C. § 704. "[T]wo conditions must be satisfied for agency action to be final": (i) "the action must mark the consummation of the agency's decision-making process" and (ii) "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citations omitted). "The most important factor" when determining whether something an agency does is a final agency action is "the actual legal effect (or lack thereof) of the agency action in question on regulated entities." *Nat'l Min. Ass'n v. McCarthy*, 758 F.3d 243, 252 (D.C. Cir. 2014) (Kavanaugh, J.).

First, Defendants have not completed their decision-making process. The Garden is one of several "projects that [the Administration is] just starting." *President Trump Announces* at 22:00-24:10 (cited at Compl. ¶¶ 106-09). Plaintiffs do not allege Defendants have issued a permit for the Garden, authorized construction of the Garden through an agency decision document, or approved the expenditure of federal funds to construct the Garden. Neither Secretary Burgum's public statements nor the supposed "West Potomac Plan" "mark the consummation of the agency's decision-making process" because that process has just begun. *Bennett*, 520 U.S. at 178 (citation omitted).

Second, neither Secretary Burgum's public statements nor the alleged "West Potomac Plan" has an "actual legal effect." *Nat'l Min. Ass'n*, 758 F.3d at 252. As explained above, *supra* Argument § III, Secretary Burgum's statements merely announced goals. And assuming *arguendo* the Court accepts Plaintiffs' conclusory allegations that there is a "West Potomac Plan," any plan is akin to the kind of proposals agencies prepare every day as part of the common business of

managing government programs. Plaintiffs' contention that Secretary Burgum's statements or the alleged West Potomac Plan constitute final agency action implies the availability of "judicial review over everything done by an administrative agency." *Independent Equip. Dealers*, 372 F.3d at 427 (citation omitted). Plaintiffs' all-encompassing view of APA review contravenes "common sense, basic precepts of administrative law, and the Administrative Procedure Act itself." *Id.* The Court should dismiss Plaintiffs' six APA claims under Rule 12(b)(6).

### V. Plaintiffs Cannot Circumvent Statutory Review via an *Ultra Vires* Claim.

Plaintiffs try to avoid dismissal by pleading an *ultra vires* claim, but *ultra vires* review is "unavailable if, as is usually the case, a statutory review scheme provides aggrieved persons with a meaningful and adequate opportunity for judicial review." *NRC*, 605 U.S. at 681 (citation omitted). Defendants Department of the Interior and the National Park Service are agencies whose final actions are reviewable under the APA. If and when Defendants take a final agency action authorizing the construction of the Garden, their decision would be subject to judicial review under the APA, which would provide "a meaningful and adequate opportunity for judicial review." *NRC*, 605 U.S. at 681 (citation omitted). Plaintiffs cannot seek judicial review before Defendants have taken final action without circumventing the APA's statutory limits. *See Glob. Health Council v. Trump*, 153 F.4th 1, 17 n.14 (D.C. Cir. 2025), *reh'g en banc denied*, No. 25-5097, 2025 WL 2709437 (D.C. Cir. 2025).

This case highlights why *ultra vires* review is unavailable when a statutory review scheme provides a meaningful and adequate opportunities for judicial review. *See NRC*, 605 U.S. at 681. If parties could challenge incipient discussions, as Plaintiffs attempt to do, it would discourage transparency in Executive Branch decision making. Executive Branch office holders routinely "come into office with policy preferences and ideas, discuss them with affected parties, sound out

other agencies for support, and work with staff attorneys to substantiate the legal basis for a preferred policy." *Dep't of Com. v. New York*, 588 U.S. 752, 783 (2019). When agencies undertake those deliberative processes, plaintiffs must typically wait for "final agency action" to seek judicial review. *E.g.*, *Franklin v. Massachusetts*, 505 U.S. 788, 796 (1992) (citing 5 U.S.C. § 704). If much earlier challenges can instead be brought against preliminary discussions by non-agencies like the Chief Executive, those Executive Branch decision-makers will be discouraged from disclosing those preliminary discussions to the public.

Moreover, Plaintiffs' *ultra vires* claim fails to allege an "extreme" error that merits *ultra vires* review. *Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009) (Kavanaugh, J.) (citation omitted). *Ultra vires* review "does not apply simply because an agency has arguably reached a conclusion which does not comport with the law," so merely "dress[ing] up a typical statutory-authority argument as an *ultra vires* claim" does not make it meritorious. *NRC*, 605 U.S. at 681-82 (citation omitted). Rather, *ultra vires* review "applies only when an agency has taken action entirely in excess of its delegated powers." *Id.* at 681 (citation omitted). Here, Plaintiffs' *ultra vires* claim is premised on the same typical statutory-authority arguments as their contrary-to-law APA claims. *Compare* Compl. ¶¶ 131-173 *with* Compl. ¶¶ 180-84. Those "statutory argument[s] fall[] well shy of a meritorious" *ultra vires* claim. *NRC*, 605 U.S. at 682. *See also Nyunt*, 589 F.3d at 449 (holding that "misinterpret[ing]" a "statutory obligation . . . is not the kind of 'extreme' error that would justify" an *ultra vires* claim). The Court should dismiss Count VII under Rule 12(b)(6).

## CONCLUSION

The Court should dismiss this case.

Dated: August 17, 2026

Respectfully submitted,
ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General

*/s/ Ian M. Swenson*

Ian M. Swenson
Counsel
Environment and Natural Resources Division
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, District of Columbia 20530
(202) 532-5139
Ian.Swenson@usdoj.gov