**UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **NATIONAL PARKS CONSERVATION ASSOCIATION**, et al.,<br><br>*Plaintiffs*,<br><br>*v.*<br><br>**DOUG BURGUM, in his official capacity as Secretary of the Interior**, et al.,<br><br>*Defendants*. | **Case No. 26-cv-02103 (EGS)** |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION OR 5 U.S.C. § 705 STAY**

## TABLE OF CONTENTS


Introduction ........ 1

Argument ........ 3

I. Plaintiffs are likely to demonstrate standing. ........ 3

A. The West Potomac Plan harms Mr. Longenecker and members of NPCA and the Committee of 100. ........ 3

B. The West Potomac Plan harms the organizational plaintiffs. ........ 9

II. Plaintiffs are likely to succeed on the merits. ........ 11

A. Plaintiffs' challenge to the West Potomac Plan is ripe for review. ........ 11

B. The West Potomac Plan is final agency action. ........ 13

C. The West Potomac Plan violates the Commemorative Works Act and 40 U.S.C. § 8106. ........ 15

III. The West Potomac Plan irreparably harms Plaintiffs. ........ 15

IV. The balance of the equities and public interest favor preliminary relief. ........ 18

Conclusion ........ 20

## TABLE OF AUTHORITIES

### Cases

*Am. Fed'n of Lab. & Cong. of Indus. Orgs. v. Sonderling*,
No. 26-cv-2061, 2026 WL 1906727 (D.D.C. July 2, 2026) .....16

*Am. Tunaboat Ass'n v. Ross*,
391 F. Supp. 3d 98 (D.D.C. 2019) .....10

*Amoco Prod. Co. v. Village of Gambell*,
480 U.S. 531 (1987) .....16

*Beatty v. Trump*,
830 F. Supp. 3d 25 (D.D.C. 2026) .....17

*Cent. United Life, Inc. v. Burwell*,
128 F. Supp. 3d 321 (D.D.C. 2015) .....17

*Cobell v. Norton*,
391 F.3d 251 (D.C. Cir. 2004) .....8

*Ctr. for Biological Diversity v. U.S. Dep't of Interior*,
144 F.4th 296 (D.C. Cir. 2025) .....3

*Fed. Educ. Ass'n v. Trump*,
795 F. Supp. 3d 74 (D.D.C. 2025) .....17

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
528 U.S. 167 (2000) .....3

*FTC v. CCC Holdings Inc.*,
No. 08-cv-2043, 2009 WL 10631282 (D.D.C. Jan. 30, 2009) .....8

*Gordon v. Holder*,
632 F.3d 722 (D.C. Cir. 2011) .....17

*In re Idaho Conservation League*,
811 F.3d 502 (D.C. Cir. 2016) .....5

*Kiakombua v. Wolf*,
498 F. Supp. 3d 1 (D.D.C. 2020) .....11

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .....11

*Mountain States Legal Found. v. Glickman*,
92 F.3d 1228 (D.C. Cir. 1996) .....8

*Nat. Res. Def. Council v. Pena*,
147 F.3d 1012 (D.C. Cir. 1998) ........ 17

*Nat'l Park Serv. v. Nat'l Tr. for Historic Pres.*,
No. 26A203, 2026 WL 2564318 (U.S. Aug. 31, 2026) (per curiam) ........ 1, 11

*Nat'l Tr. for Historic Pres. v. Nat'l Park Serv.*,
185 F.4th 1185 (D.C. Cir. 2026) ........ 11

*N.Y. Republican State Comm. v. SEC*,
927 F.3d 499 (D.C. Cir. 2019) ........ 5

*Planned Parenthood of Greater N.Y. v. HHS*,
No. 25-cv-2453, 2025 WL 2840318 (D.D.C. Oct. 7, 2025) ........ 13

*POET Biorefining, LLC v. EPA*,
970 F.3d 392 (D.C. Cir. 2020) ........ 11

*Pueblo of Santa Ana v. Hodel*,
663 F. Supp. 1300 (D.D.C. 1987) ........ 14

*Racing Enthusiasts & Suppliers Coal. v. EPA*,
45 F.4th 353 (D.C. Cir. 2022) ........ 14

*S. Poverty L. Ctr. v. U.S. Dep't of Homeland Sec.*,
No. 18-cv-760, 2020 WL 3265533 (D.D.C. June 17, 2020) ........ 8

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) ........ 7, 12

*Yazdanpanahderav v. U.S. Dep't of State*,
No. 23-cv-3688, 2024 WL 3010874 (D.D.C. June 14, 2024) ........ 15

*Zaid v. Exec. Off. of President*,
815 F. Supp. 3d 113 (D.D.C. 2025) ........ 17

*Zweibon v. Mitchell*,
516 F.2d 594 (D.C. Cir. 1975) (en banc) ........ 19

**Statutes**

5 U.S.C.
§ 551(4) ........ 13
§ 551(6) ........ 13

40 U.S.C.
§ 8106 ........ 2, 11, 12, 15, 18
§ 8902(a)(4) ........ 10

§ 8905(a)(1) .......... 10
§ 8905(a)(2) .......... 10
§ 8906(a) .......... 10
§ 8908(c) .......... 11, 15, 18

**Executive Orders**

Exec. Order No. 13934, 85 Fed. Reg. 41165 (July 3, 2020).......... 8

Exec. Order No. 13978, 86 Fed. Reg. 6809 (Jan. 18, 2021) .......... 8

**Other Authorities**

*C--NAMA 245076 - Tidal Basin Redevelopment Plan*, SAM.gov, https://perma.cc/P67C-RL5K (last visited Sep. 13, 2026).......... 4

Dareh Gregorian & Gary Grumbach, *Judge Tears into Trump Administration for Felling Trees on D.C. Golf Course the President Wants to Remake*, NBC News (Oct. 12, 2026), https://perma.cc/S6LY-SBK4 .......... 6, 7

Donald J. Trump (@realDonaldTrump), Truth Social (May 15, 2026, at 4:52 AM), https://perma.cc/M6W9-TUF2.......... 3, 7

*DSC - NER & PRPK - 15505 - CMR-West Potomac Park and Tidal Basin Redevelopment Including Garden of Heroes*, Acquisition Gateway, https://perma.cc/JS98-5VPP (last visited Oct. 11, 2026).......... 2, 4, 6, 12–14

*DSC - NER & PRPK - 15526 - Construction-West Potomac Park and Tidal Basin Redevelopment Including Garden of Heroes (NAMA)*, Acquisition Gateway, https://perma.cc/QDA7-GJXT (last visited Oct. 11, 2026) .......... 2, 4, 6, 12–14

Furqat Sidiqov (@FurqatSidiq), X (Aug. 22, 2026, at 4:56 PM), https://perma.cc/Q2S4-EB2J.......... 1, 8, 16

*LIVE: President Trump Delivers Remarks at the Great American State Fair Kickoff Party | NBC News* (YouTube, June 24, 2026), https://www.youtube.com/watch?v=M4HckAX_IxU.......... 4

Luke Broadwater & Zachary Small, *Trump's Vision for 'Garden of Heroes' Keeps Getting Bigger and Higher in Cost*, N.Y. Times (May 3, 2026), https://perma.cc/WZE5-BZ4N.......... 5, 6

*President Trump Announces $700 Million for Coal Industry* (C-SPAN, June 4, 2026), https://www.c-span.org/program/white-house-event/president-trump-makes-announcement-on-clean-coal/680441 .......... 14

Secretary Doug Burgum (@SecretaryBurgum), X (May 15, 2026, at 5:27 PM), https://perma.cc/NK92-CU9K .......... 4, 10

## INTRODUCTION

Defendants still do not dispute that the West Potomac Plan is illegal. Instead, their defense boils down to the repeated assertion that they are not "currently building" the National Garden of American Heroes. Dkt. No. 18 at 2, 16, 18, 26, 33, 38, 43, 44 n.6. That refrain fails to recognize that the purpose of preliminary relief is to prevent irreparable injury *before* it occurs. Plaintiffs have demonstrated imminent, irreparable harm from the adoption and implementation of the West Potomac Plan, regardless of whether the Court credits Defendants' assertions that construction of the garden complex has not begun. Preliminary relief is necessary to forestall those harms now, rather than at some future, unidentified point in time when Defendants can claim it is too late to redress Plaintiffs' injuries. *Cf. Nat'l Park Serv. v. Nat'l Tr. for Historic Pres.*, No. 26A203, 2026 WL 2564318, at *3 (U.S. Aug. 31, 2026) (per curiam) (relying on the government's assertion that "freezing construction would risk significant 'construction-related problems,'" including "concerns about how to secure the structural integrity of a partially completed superstructure" (citation omitted)).

In any event, Defendants' protestations that construction has not begun are dubious at best. In recent weeks, workers have begun assembling gazebos gifted from Uzbekistan in a fenced-off corner of West Potomac Park, while digging trenches and pouring concrete for walkways in the surrounding area. The Uzbekistan ambassador proclaimed that he was "[p]roud to see Uzbek art become part of the Garden of American Heroes." Furqat Sidiqov (@FurqatSidiq), X (Aug. 22, 2026, at 4:56 PM), https://perma.cc/Q2S4-EB2J. Although Defendants' carefully worded declaration claims that the gazebos are "temporary," it fails to provide any specific plans for their removal. Nor does it express any intention to remove the freshly installed concrete walkways, which happen to be located in the same area of the park where renderings of the planned garden complex show new structures and paths.

Defendants' plans to construct the garden complex in West Potomac Park are evident from public documents as well. The National Park Service has awarded a contract to revise a proposal for the western portion of the Tidal Basin area—precisely where the renderings show the garden complex will be sited. In addition, the Park Service apparently plans to award two contracts for construction in West Potomac Park that includes the "Garden of Heroes." Those contracts have a combined estimated value of over $500 million, and the anticipated period of performance begins in January 2027. *See DSC - NER & PRPK - 15526 - Construction-West Potomac Park and Tidal Basin Redevelopment Including Garden of Heroes (NAMA)*, Acquisition Gateway, https://perma.cc/QDA7-GJXT (last visited Oct. 11, 2026); *DSC - NER & PRPK - 15505 - CMR-West Potomac Park and Tidal Basin Redevelopment Including Garden of Heroes*, Acquisition Gateway, https://perma.cc/JS98-5VPP (last visited Oct. 11, 2026) (hereinafter "Garden of Heroes Forecasted Contracts").

All this evidence makes clear that Plaintiffs' claims are ripe for review. And on the merits, the West Potomac Plan unequivocally violates the Commemorative Works Act (CWA) and 40 U.S.C. § 8106. Defendants have forfeited any argument to the contrary. The equitable factors also decisively favor a preliminary injunction or 5 U.S.C. § 705 stay: Plaintiffs face irreparable harm from the West Potomac Plan because their recreational, aesthetic, procedural, and informational injuries cannot be remedied easily—if at all—after the fact. On the other side of the ledger, Defendants can identify no meaningful harm they will suffer from preliminary relief that preserves the status quo at West Potomac Park. Accordingly, the Court should preliminarily enjoin or stay implementation of the West Potomac Plan and deny Defendants' motion to dismiss.

## ARGUMENT

### I. Plaintiffs are likely to demonstrate standing.

#### A. The West Potomac Plan harms Mr. Longenecker and members of NPCA and the Committee of 100.

The West Potomac Plan harms the recreational and aesthetic interests of Mr. Longenecker and members of the National Parks Conservation Association (NPCA) and the Committee of 100 on the Federal City. Dkt. No. 15-1 at 14–22. These individuals regularly take advantage of the park's recreational features, and the construction of the garden complex would disrupt and detract from their enjoyment of the park. *E.g.*, Decl. of Steve Longenecker ¶ 13, Dkt. No. 15-3; Decl. of Edward Stierli ¶ 40, Dkt. No. 15-4; Decl. of James Craig Crutchfield ¶ 10, Dkt. No. 15-5; Decl. of Paul W. Edmondson ¶ 11, Dkt. No. 15-6. In other words, Plaintiffs "use the affected area and are persons for whom the aesthetic and recreational values of the area will be lessened by the challenged activity." *See Ctr. for Biological Diversity v. U.S. Dep't of Interior*, 144 F.4th 296, 305 (D.C. Cir. 2025) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 183 (2000)).

Defendants continue not to dispute the legal adequacy of these recreational and aesthetic harms. Instead, they repeatedly insist that Plaintiffs' injuries are not imminent enough to confer standing. Dkt. No. 18 at 22–30. Those arguments are not persuasive.

To start, Defendants' conclusory assertion that the West Potomac Plan cannot harm Plaintiffs because it "does not exist," *id.* at 23, ignores the extensive evidence of the plan in the record. President Trump has shared a rendering of the garden complex and announced that his administration is "transforming" the park into "a World Class Masterpiece with elegant Landscaping, and adorned with Beautiful Statues." Donald J. Trump (@realDonaldTrump), Truth Social (May 15, 2026, at 4:52 AM), https://perma.cc/M6W9-TUF2. Secretary Burgum has

shared the same image and declared that the garden complex "will be enjoyed for generations to come." Secretary Doug Burgum (@SecretaryBurgum), X (May 15, 2026, at 5:27 PM), https://perma.cc/NK92-CU9K. One of the President's top fundraisers has circulated a pledge agreement with similar renderings on behalf of "The National Garden of American Heroes Foundation," describing the garden complex as a "transformative project" and requesting a "binding commitment of payment." Garden Fundraising Agreement at 9–10, Dkt. No. 15-12. Even more recently, the Park Service has awarded a contract to revise the design concept for the western portion of the Tidal Basin area—exactly where the renderings show the garden complex will be located. Tidal Basin Request for Qualifications, Dkt. No. 15-13; Tidal Basin Scope of Work, Dkt. No. 15-14; *see C--NAMA 245076 - Tidal Basin Redevelopment Plan*, SAM.gov, https://perma.cc/P67C-RL5K (last visited Sep. 13, 2026). And the General Services Administration has published two projected Park Service contracts for "construction" in West Potomac Park, "including [the] Garden of Heroes," with the period of performance expected to begin in January 2027. Garden of Heroes Forecasted Contracts, *supra* (capitalization omitted).

Defendants downplay this evidence of the West Potomac Plan, insisting that the President, Secretary Burgum, and the Foundation have only "spoken about" the garden complex. Dkt. No. 18 at 28. That is a dramatic understatement given the President's announcement that "[i]n West Potomac Park, we are creating the National Garden of American Heroes," along with the Foundation's representation that donations "will be used" to support the garden complex. *LIVE: President Trump Delivers Remarks at the Great American State Fair Kickoff Party | NBC News*, at 56:34 (YouTube, June 24, 2026), https://www.youtube.com/watch?v=M4HckAX_IxU; Garden Fundraising Agreement at 10. Defendants also suggest that the detailed renderings of the garden complex, which appear in the pledge agreement and were

posted on social media by the President and Secretary Burgum, are meaningless because they do not represent "the final product." Dkt. No. 18 at 29. Of course, the final version of the project may differ from the renderings in some respects. But the renderings illustrate the overall plan for the garden complex: they show, consistent with public reporting, that it will include hundreds of life-size statues alongside dining facilities, an amphitheater, and other features, all of which will interfere with everyday recreational uses of the park. Garden Fundraising Agreement at 3–8; *see* Luke Broadwater & Zachary Small, *Trump's Vision for 'Garden of Heroes' Keeps Getting Bigger and Higher in Cost*, N.Y. Times (May 3, 2026), https://perma.cc/WZE5-BZ4N. That suffices to show a likelihood of future injury to Plaintiffs' recreational and aesthetic interests, even if Defendants insist that the project is "still in the planning stage." *See In re Idaho Conservation League*, 811 F.3d 502, 509 (D.C. Cir. 2016); *cf. N.Y. Republican State Comm. v. SEC*, 927 F.3d 499, 504 (D.C. Cir. 2019) (risk-of-harm analysis does not require "literal certainty").

The only countervailing evidence Defendants point to—a declaration from Park Service official Kevin Griess—does not change that conclusion. The declaration does nothing to refute the President's and Secretary Burgum's public announcements that the garden complex will be built in West Potomac Park. Nor does it even mention the fundraising agreement circulated by the Foundation. Instead, Dr. Griess states only that he is "not aware of a final decision by the [Park Service] to site the National Garden in West Potomac Park" and that he has "not received direction to include the National Garden in West Potomac Park." Decl. of Dr. Kevin Griess ¶¶ 51–52, Dkt. No. 18-1. Dr. Griess also represents that there is "no current or imminent construction activity" for the garden complex in West Potomac Park. *Id.* ¶ 53. That assertion is difficult to credit given that performance on contracts for "construction" of the garden complex

appears poised to begin in January 2027. *See* Garden of Heroes Forecasted Contracts, *supra*. And Defendants have obfuscated the status of other construction projects that are the subject of litigation in this district. *See* Dareh Gregorian & Gary Grumbach, *Judge Tears into Trump Administration for Felling Trees on D.C. Golf Course the President Wants to Remake*, NBC News (Oct. 12, 2026), https://perma.cc/S6LY-SBK4 (noting court's criticism of the government's "'inexcusable' gamesmanship after it removed hundreds of trees from a public golf course," despite having assured the court that it would provide "ample warning if it planned any 'irreversible' actions"). But even taken at face value, Dr. Griess's statement fails to rebut Plaintiffs' showing that there is a substantial risk of future injury stemming from the plan to transform the park into a garden complex. Dkt. No. 15-1 at 18–22.

The declaration is just as revealing for what it does not say. Dr. Griess focuses solely on the installation of sculptures, asserting that the revised design for the Tidal Basin area "does not include a plan to place statues in the park." Griess Decl. ¶ 51; *see also id.* ¶ 52 (stating that "the current conceptual designs for the Tidal Basin Plan do not include statues or plinths"); *id.* ¶ 55 ("I am not aware that the [Park Service] has awarded any funds for the acquisition or construction of statues of the persons identified in Executive Order 13978 or otherwise intended to be included in the National Garden."). But he does not elaborate on the details of the revised Tidal Basin design or disclaim the possibility that it includes the new concrete walkways or the dining facilities, amphitheater, and other features shown in renderings of the garden complex. *See* Garden Fundraising Agreement at 3–8; *see also* Broadwater & Small, *Trump's Vision for 'Garden of Heroes,' supra*. The declaration thus leaves open a path for Defendants to begin with construction of those features before installing the sculptures. And if past is prologue, they will do so quickly and without any opportunity for public comment under required legal processes.

*See* Compl. ¶¶ 123–30 (discussing several examples of Trump administration following similar playbook, including sudden installation of statues at Freedom Plaza); Gregorian & Grumbach, *Judge Tears into Trump Administration*, *supra*.

Aside from the declaration, Defendants recycle their argument that it is somehow unclear whether Plaintiffs will be injured by the West Potomac Plan. Dkt. No. 18 at 26–29. The proper inquiry—which Defendants refuse to engage with—is whether Plaintiffs have shown "a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (internal quotation marks and citation omitted); *see* Dkt. No. 15-1 at 18–19. The plan to "transform[]" West Potomac Park from a supposedly "BARREN field," Donald J. Trump (@realDonaldTrump), Truth Social, *supra*, into a massive garden complex with 250 life-size statues alongside several other features will necessarily reduce the open recreational space available in the park and encroach on the isolation and serenity of the FDR and MLK memorials. *See* Garden Fundraising Agreement at 3–8. That will diminish Plaintiffs' enjoyment of the park, regardless of the specific location of each statue. *E.g.*, Longenecker Decl. ¶ 16 (reduction of open field space "would inevitably increase the competition for fields and the difficulty of finding space to play"); Stierli Decl. ¶ 42 ("Even in its earliest stages, construction of the garden complex would harm my recreational, aesthetic, and other interests in West Potomac Park by reducing the open space available in the park."); Crutchfield Decl. ¶¶ 11–12 (increased crowding and traffic would make biking in park more difficult and detract from enjoyment of FDR and MLK memorials); Edmondson Decl. ¶¶ 11–12 (similar).[1]

---

[1] Plaintiffs do not claim that Mr. Crutchfield and Mr. Edmondson have a right to bike through the park "without encountering other visitors." Dkt. No. 18 at 26 n.4. The point is that the construction of the garden complex will make biking in the park more dangerous and less enjoyable, thereby harming their recreational interests. Crutchfield Decl. ¶¶ 10–11; Edmondson

Defendants insist that the recent construction of gazebos and concrete walkways in the southeastern corner of West Potomac Park has nothing to do with the garden complex. Dkt. No. 18 at 29–30. As to the gazebos themselves, that position continues to contradict the public statement of the Uzbekistan ambassador, who said his country had gifted the gazebos as "part of the Garden of American Heroes." Furqat Sidiqov (@FurqatSidiq), X, *supra*. Defendants offer no explanation at all for that contradiction, urging the Court instead to ignore the "hearsay tweet" based on a handful of out-of-circuit decisions. Dkt. No. 18 at 19 n.2. But in this circuit, a "preliminary injunction may be granted based on less formal procedures and on less extensive evidence than in a trial on the merits." *Cobell v. Norton*, 391 F.3d 251, 261 (D.C. Cir. 2004); *see also, e.g.*, *S. Poverty L. Ctr. v. U.S. Dep't of Homeland Sec.*, No. 18-cv-760, 2020 WL 3265533, at *3 n.2 (D.D.C. June 17, 2020) (noting that "courts generally permit consideration of hearsay evidence in connection with preliminary injunction motions" (citation omitted)); *FTC v. CCC Holdings Inc.*, No. 08-cv-2043, 2009 WL 10631282, at *1 (D.D.C. Jan. 30, 2009) (court may "consider hearsay evidence because the Federal Rules of Evidence do not apply to preliminary injunction hearings").[2]

---

Decl. ¶ 11; *cf. Mountain States Legal Found. v. Glickman*, 92 F.3d 1228, 1233 (D.C. Cir. 1996) ("The plaintiffs may not have any particular right to federal timber contracts, but no such 'right' is required any more than a 'right' to view crocodiles in foreign sites was necessary for the plaintiffs in *Lujan*.").

[2] Defendants argue that "it would make no sense to include Uzbek aywans in a statue garden intended to celebrate historically significant Americans." Dkt. No. 18 at 1. If Defendants have settled on the "intended" purpose of the garden complex, that would seem to undermine their repeated assertion that there is no plan at all. Aside from that, the list of figures to be included in the garden complex is not limited to "significant Americans." *See* Exec. Order No. 13934 § 7, 85 Fed. Reg. 41165 (July 3, 2020) (explaining eligibility of "public figures such as Christopher Columbus, Junipero Serra, and the Marquis de La Fayette, who lived prior to or during the American Revolution and were not American citizens, but who made substantive historical contributions to the discovery, development, or independence of the future United States"); Exec. Order No. 13978 § 3(b), 86 Fed. Reg. 6809 (Jan. 18, 2021) (listing those three individuals

Dr. Griess's declaration also leaves several open questions about whether and when the gazebos will be removed. He states that the gazebos are "fully removable" and are "*expected* to be located at the sites depicted . . . for approximately 5 months." Griess Decl. ¶¶ 26–27 (emphasis added). But he provides no specific details about the plan for removal. Nor does Dr. Griess rule out the possibility that Defendants might simply move the gazebos to another location in West Potomac Park. And he does not commit Defendants to removing the concrete walkways that have been installed, stating only that "affected areas will be restored, *as necessary*, to their original condition." *Id.* ¶ 28 (emphasis added). As Plaintiffs have noted, the site of the walkways matches the location of new structures and paths shown in renderings of the garden complex. Dkt. No. 15-1 at 21–22; *see* Garden Fundraising Agreement at 6. The declaration thus does not rebut Plaintiffs' showing that they face a substantial risk of future injury from further implementation of the West Potomac Plan.

**B. The West Potomac Plan harms the organizational plaintiffs.**

The organizational plaintiffs have demonstrated standing as well. Those plaintiffs have longstanding interests in West Potomac Park and have been deprived of the opportunity to participate in statutorily required review processes concerning the transformation of the park into a garden complex. Dkt. No. 15-1 at 22–24; *see* Stierli Decl. ¶¶ 12–17, 22–29; Decl. of Rebecca Miller ¶¶ 10–14, 20–27, Dkt. No. 15-8; Decl. of Judy Scott Feldman ¶¶ 8–10, 15–22, Dkt. No. 15-9; Decl. of Sue Breitkopf ¶¶ 8–10, 15–20, Dkt. No. 15-10; Decl. of Judy Chesser ¶¶ 25–40, 45–50, Dkt. No. 15-7; Decl. of Charles A. Birnbaum ¶¶ 13–15, 21–27, Dkt. No. 15-11.

---

among several others to be included in garden). So it is hardly inconceivable that Defendants would also choose to include gazebos that are "a sign of the friendship between [the United States and Uzbekistan]." Dkt. No. 18 at 1.

Defendants contend that they have not violated any statutory requirements by "sharing the preliminary concept" for the garden complex. Dkt. No. 18 at 24. Their argument focuses on 40 U.S.C. § 8906(a) but ignores the other procedural requirements of the CWA. Under that statute, Congress must designate a "sponsor" to establish a commemorative work. *Id.* § 8902(a)(4). The sponsor then needs to consult with the National Capital Memorial Advisory Commission regarding potential alternative sites and design concepts. *Id.* § 8905(a)(1). Following that consultation, the Secretary of the Interior or Administrator of General Services must submit site and design proposals to the Commission of Fine Arts and the National Capital Planning Commission. *Id.* § 8905(a)(2). Defendants followed none of these procedures before deciding to locate the garden complex in West Potomac Park. If they had, Plaintiffs could have presented concerns and weighed in on potential alternatives, as the statute contemplates. Stierli Decl. ¶ 29; Miller Decl. ¶ 27; Feldman Decl. ¶ 22; Breitkopf Decl. ¶ 20; Chesser Decl. ¶ 50; Birnbaum Decl. ¶ 27.

Defendants cannot innocently recast the West Potomac Plan as "Secretary Burgum's thoughts about a potential future project." Dkt. No. 18 at 26. Secretary Burgum, like President Trump, has not characterized the garden complex as a "potential" project; he has announced that it "will be enjoyed for generations to come." Secretary Doug Burgum (@SecretaryBurgum), X, *supra*. That announcement was not conditioned on any further steps or congressional approval. *See* Compl. ¶¶ 102–03. As Judge McFadden has explained, a plaintiff may suffer procedural harm based on the loss of "time and opportunity to influence agency decisionmakers before they commit to a course of action." *Am. Tunaboat Ass'n v. Ross*, 391 F. Supp. 3d 98, 109 (D.D.C. 2019). That is precisely what happened here: Defendants decided to site the garden complex in West Potomac Park before Plaintiffs and others had the opportunity to influence that decision.

Stierli Decl. ¶¶ 28–29; Miller Decl. ¶¶ 26–27; Feldman Decl. ¶¶ 21–22; Breitkopf Decl. ¶¶ 19–20; Chesser Decl. ¶¶ 49–50; Birnbaum Decl. ¶¶ 26–27. The resulting procedural injury gives rise to standing. *See, e.g.*, *Kiakombua v. Wolf*, 498 F. Supp. 3d 1, 24 (D.D.C. 2020) (K.B. Jackson, J.) ("[I]t is well established that a plaintiff has standing to bring a claim concerning a procedural injury if she can show that the agency failed to abide by a procedural requirement that was 'designed to protect some threatened concrete interest' of the plaintiff." (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 573 n.8 (1992))).

Finally, Defendants' promise that they will "comply with all applicable law prior to constructing the National Garden of American Heroes" is not reassuring and does not diminish the organizational plaintiffs' procedural injuries. Dkt. No. 18 at 24. The CWA prohibits siting a new commemorative work in the Reserve, which includes West Potomac Park. 40 U.S.C. § 8908(c). Another statute forbids erecting a building or structure on any federal parkland in the District of Columbia without express authority of Congress. *Id.* § 8106. Defendants do not—and cannot—explain how they will "comply" with those explicit prohibitions. *See Nat'l Tr. for Historic Pres. v. Nat'l Park Serv.*, 185 F.4th 1185, 1220 (D.C. Cir. 2026) (concluding that § 8106 likely barred construction of ballroom); *Nat'l Tr. for Historic Pres.*, 2026 WL 2564318, at *4 (Roberts, C.J., dissenting) (same). And Defendants have already failed to satisfy the CWA procedural requirements discussed above. That failure cannot be cured by some indeterminate future process.

## II. Plaintiffs are likely to succeed on the merits.

### A. Plaintiffs' challenge to the West Potomac Plan is ripe for review.

Plaintiffs' claims are ripe for review. Since constitutional ripeness "is subsumed into the Article III requirement of standing," *POET Biorefining, LLC v. EPA*, 970 F.3d 392, 403 (D.C. Cir. 2020) (citation omitted), Defendants' arguments on that ground fail for the same reasons

discussed above. As for prudential ripeness—which "is in some tension" with "the principle that 'a federal court's obligation to hear and decide' cases within its jurisdiction 'is virtually unflagging,'" *Susan B. Anthony List*, 573 U.S. at 167 (citation omitted)—Plaintiffs' claims do not require any further factual development. Dkt. No. 15-1 at 28–29. And deferring judicial review would cause hardship to Plaintiffs by allowing construction to proceed and making future remediation substantially more difficult. *Id.* at 29–30.

Defendants continue to insist that the claims are not purely legal because they hinge on the design and construction of the garden complex. Dkt. No. 18 at 32–33. But the Court can straightforwardly conclude that the West Potomac Plan violates the CWA and 40 U.S.C. § 8106, which Defendants have not disputed. As explained above, moreover, the substantial risk of future harm to Plaintiffs' recreational and aesthetic interests is clear at this stage, without the need for any further factual development. *See supra* at 3–9. The same is true for the organizational plaintiffs' procedural and informational injuries because Defendants have already failed to undertake "necessary reviews and approvals," Dkt. No. 18 at 32, before deciding to construct the garden complex in West Potomac Park.

Contrary to Defendants' assertions, the hardship to Plaintiffs from withholding judicial review does not depend on the "assumption that Defendants are currently building" the garden complex. *Id.* at 33. To be sure, the evidence strongly suggests that construction has begun. *See* Dkt. No. 15-1 at 11–12, 21–22 (discussing installation of gazebos and concrete walkways); Stierli Decl. ¶¶ 42–49. But even if the Court concludes otherwise, Plaintiffs still face hardship from deferring review while Defendants move forward with the project. *See, e.g.*, Tidal Basin Scope of Work at 2; Garden of Heroes Forecasted Contracts, *supra*. And once they do so, the resulting injuries cannot be easily undone. As a result, Plaintiffs "will not necessarily have a

later opportunity to challenge" the construction of the garden complex "before suffering serious, additional harm." *See Planned Parenthood of Greater N.Y. v. HHS*, No. 25-cv-2453, 2025 WL 2840318, at *15 (D.D.C. Oct. 7, 2025).

**B. The West Potomac Plan is final agency action.**

The West Potomac Plan is reviewable "agency action." Dkt. No. 15-1 at 24–26. The Administrative Procedure Act defines agency action to include a "rule," which means "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency." 5 U.S.C. § 551(4). Defendants' plan to transform West Potomac Park into a garden complex fits comfortably within that broad definition. And even if it did not, the West Potomac Plan would constitute an "order," which includes "the whole or a part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency in a matter other than rule making." *Id.* § 551(6).

Defendants do not engage with these capacious definitions of agency action. Instead, they renew their argument that there has been no final decision and that the President and Secretary Burgum have simply "identified West Potomac Park as the current preferred location" for the garden complex. Dkt. No. 18 at 35; *see also id.* at 36 ("What the President and Secretary Burgum have done is discuss their preliminary concepts for the National Garden of American Heroes."). As previously explained, that argument fails upon even a cursory examination of what the President and Secretary Burgum have actually said—not to mention the extensive additional evidence of the plan's existence. *See supra* at 3–5; *see also* Garden Fundraising Agreement at 9–10; Garden of Heroes Forecasted Contracts, *supra*.

The West Potomac Plan is also "final." The plan represents the consummation of Defendants' decisionmaking process because they have decided to transform West Potomac Park

into a sprawling garden complex. Dkt. No. 15-1 at 26. That decision has direct and immediate consequences: it diminishes the ability of Plaintiffs' members and others to use the park for the recreational purposes for which it was established, and it deprives the organizational plaintiffs of the opportunity to participate in legally required review processes where they could provide expert input on the plan, propose alternatives, and otherwise influence the decisionmaking process. *Id.* at 27.

This conclusion hardly requires extending judicial review to cover "everything done by an administrative agency." *Contra* Dkt. No. 18 at 37 (citation omitted). Rather, it follows naturally from Defendants' own actions and their consequences for Plaintiffs and others. *Cf. Racing Enthusiasts & Suppliers Coal. v. EPA*, 45 F.4th 353, 358 (D.C. Cir. 2022) (explaining that finality test "is a 'pragmatic' inquiry that requires courts to examine the 'concrete consequences' of an agency action" (citation omitted)). Secretary Burgum "made the decision to publicly and definitively state his position" on construction of the garden complex; he "cannot now avoid judicial review by claiming that he has not made a final decision." *See Pueblo of Santa Ana v. Hodel*, 663 F. Supp. 1300, 1308 (D.D.C. 1987).

Defendants emphasize the President's statement that the garden complex is one of several projects the administration is "just starting." Dkt. No. 18 at 37; *see President Trump Announces $700 Million for Coal Industry*, at 24:08 (C-SPAN, June 4, 2026), https://www.c-span.org/program/white-house-event/president-trump-makes-announcement-on-clean-coal/680441. Even if implementation of the West Potomac Plan is still in the early stages, however, it remains true that Defendants have made a decision to transform the park into a garden complex. Besides, the record belies Defendants' claim that the process "has just begun." Dkt. No. 18 at 37; *see* Garden Fundraising Agreement at 9–10; Garden of Heroes Forecasted Contracts, *supra*. And while

Defendants urge the Court to ignore the actions of "non-parties," Dkt. No. 18 at 38, those actions evince Defendants' adoption and implementation of the West Potomac Plan.

### C. The West Potomac Plan violates the Commemorative Works Act and 40 U.S.C. § 8106.

As for the merits, the illegality of the West Potomac Plan is not in dispute. Dkt. No. 15-1 at 30–32. The CWA bars the location of any new commemorative work within the Reserve, which includes West Potomac Park. 40 U.S.C. § 8908(c). In addition, § 8106 prohibits the erection of a building or structure "on any reservation, park, or public grounds of the Federal Government in the District of Columbia without express authority of Congress." The West Potomac Plan plainly violates both statutes, and Defendants have forfeited any argument to the contrary. *See, e.g.*, *Yazdanpanahderav v. U.S. Dep't of State*, No. 23-cv-3688, 2024 WL 3010874, at *3 (D.D.C. June 14, 2024) ("The Court may treat an argument to which a party fails to respond as conceded."). They assert only that they will comply with all applicable laws prior to construction, but the CWA and § 8106 are outright prohibitions—no "compliance" process beforehand can cure the defects. Plaintiffs are therefore likely to succeed on the merits of their CWA and § 8106 claims.

## III. The West Potomac Plan irreparably harms Plaintiffs.

Plaintiffs face irreparable harm from Defendants' adoption and implementation of the West Potomac Plan, which has accelerated in recent weeks. Mr. Longenecker and members of NPCA and the Committee of 100 have significant recreational and aesthetic interests in the park that will be diminished if construction of the garden complex is allowed to proceed. *E.g.*, Longenecker Decl. ¶ 13; Stierli Decl. ¶ 40; Crutchfield Decl. ¶ 10; Edmondson Decl. ¶ 11. The organizational plaintiffs, for their part, are irreparably injured by Defendants' failure to comply with legally required processes. Stierli Decl. ¶¶ 28–30; Miller Decl. ¶¶ 26–28; Feldman Decl.

¶¶ 21–23; Breitkopf Decl. ¶¶ 19–22; Chesser Decl. ¶¶ 49–51; Birnbaum Decl. ¶¶ 26–28. These harms cannot be remedied easily—if at all—after the fact. Dkt. No. 15-1 at 33–35.

Again, these injuries do not depend on the "assumption that Defendants are currently building" the garden complex. *Contra* Dkt. No. 18 at 17. "The point of preliminary relief is to prevent irreparable harm that a movant would suffer before a court can issue final judgment." *Am. Fed'n of Lab. & Cong. of Indus. Orgs. v. Sonderling*, No. 26-cv-2061, 2026 WL 1906727, at *6 (D.D.C. July 2, 2026). A court need not wait until after irreparable harm has already occurred; that would defeat the purpose of preliminary relief to preserve the status quo, particularly in cases concerning recreational or aesthetic injuries that cannot be remedied at final judgment. *See* Dkt. No. 15-1 at 33–34 (citing several cases finding irreparable harm based on such injuries); *cf. Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 545 (1987) (explaining that if environmental injury "is sufficiently *likely*, . . . the balance of harms will usually favor the issuance of an injunction to protect the environment" (emphasis added)). At a minimum, preliminary relief is necessary here to prevent irreparable harm to Plaintiffs' recreational, aesthetic, procedural, and informational interests.

On top of that, the record suggests that Defendants have in fact begun construction of the garden complex. In recent weeks, workers have begun constructing gazebos gifted as "part of the Garden of American Heroes," Furqat Sidiqov (@FurqatSidiq), X, *supra*, and pouring concrete for walkways that cross the park's open fields. Stierli Decl. ¶¶ 42–49. While Dr. Griess's declaration claims that the gazebos are temporary, it provides no specific details concerning their removal. As to the poured concrete—which by nature does not lend itself to being "temporary"—the declaration fails to establish that the concrete walkways will be removed at all as the garden complex continues to take shape. And Plaintiffs do not argue that the

gazebos themselves "block any bike lanes" or prevent Mr. Longenecker from playing ultimate frisbee. Dkt. No. 18 at 19. Rather, the construction of the gazebos and walkways—which has already displaced recreational use of the park, Stierli Decl. ¶ 47—illustrates that Defendants are swiftly moving forward with implementation of the West Potomac Plan, necessitating preliminary relief to preserve the status quo before construction of the garden complex becomes a *fait accompli*.

While claiming that there is nothing to see here, Defendants simultaneously argue that Plaintiffs' "lack of urgency" undermines the need for relief. Dkt. No. 18 at 20 (internal quotation marks and citation omitted). But "a delay in filing is not a proper basis for denial of a preliminary injunction." *Gordon v. Holder*, 632 F.3d 722, 724 (D.C. Cir. 2011); *see also, e.g.*, *Zaid v. Exec. Off. of President*, 815 F. Supp. 3d 113, 135 (D.D.C. 2025) (granting motion for preliminary injunction and noting that "the government has not offered any credible reason why the delay in filing affects the particular types of irreparable harm at issue"). And delay is "understandable when the 'effects' of the challenged action 'are more acutely felt' as time goes on." *Beatty v. Trump*, 830 F. Supp. 3d 25, 47 (D.D.C. 2026) (quoting *Fed. Educ. Ass'n v. Trump*, 795 F. Supp. 3d 74, 100 (D.D.C. 2025)). In this case, recent factual developments have made preliminary relief necessary, as Defendants have broken ground in West Potomac Park, awarded a contract for a revised design of the Tidal Basin area, and posted anticipated contracts for construction that includes the Garden of Heroes. Plaintiffs promptly filed their motion after these new developments occurred, so this is not a case where the movant has "no reasonable explanation" for any delay. *Nat. Res. Def. Council v. Pena*, 147 F.3d 1012, 1026 (D.C. Cir. 1998); *see also Cent. United Life, Inc. v. Burwell*, 128 F. Supp. 3d 321, 329 (D.D.C. 2015) (granting motion for permanent injunction where "plaintiffs have offered both a reasonable

explanation for the delay and ample (and unrebutted) reasons to believe that they would suffer irreparable harm").

**IV. The balance of the equities and public interest favor preliminary relief.**

The remaining factors favor Plaintiffs as well. Plaintiffs face significant and irreparable harm from the transformation of West Potomac Park if construction is allowed to proceed. The public also has a substantial interest in the preservation of the park, which is a recreational haven for thousands of D.C. residents and visitors and is listed on the National Register of Historic Places as part of the East and West Potomac Parks Historic District. Stierli Decl. ¶ 29; Miller Decl. ¶ 18; *see* Dkt. No. 15-1 at 35–36. Defendants, by contrast, face no meaningful harm from preliminary relief preserving the status quo at the park. In fact, given Defendants' repeated insistence that the West Potomac Plan does not exist and that they have no plans to proceed with construction, *e.g.*, Dkt. No. 18 at 23, it is hard to see how they are injured at all by an injunction or stay halting the plan's implementation.

All Defendants can muster is a conclusory claim that the government is harmed by any injunction that exceeds the Court's power. *Id.* at 39. Plaintiffs have standing and their claims are ripe for review, so the requested relief is well within the Court's authority. Defendants also suggest that the scope of Plaintiffs' proposed order is "unclear." *Id.* But there should be no ambiguity: while Defendants are free to "develop[]" a new proposal for the Garden of Heroes if they like, *id.* at 40, they must start from the beginning and comply with the requirements of the CWA and other applicable statutes—including the prohibitions on siting new commemorative works within the Reserve, 40 U.S.C. § 8908(c), and erecting new buildings or structures on federal parkland in the District without Congress's express approval, *id.* § 8106. Nor is there any risk of "chilling construction and maintenance activity" in the park. Dkt. No. 18 at 40. Under Plaintiffs' proposed order, Defendants could continue to undertake activities that truly constitute

"[r]outine maintenance," including "mowing and other turf care," "leaf and debris removal," and "litter collection." Griess Decl. ¶ 12. They could not, however, undertake any demolition or construction activity in the park related to the garden complex. Dkt. No. 15-15 at 2.

With nowhere else to turn, Defendants claim that the "temporary exhibition" of the gazebos "is an 'Executive Branch policy with foreign affairs implications.'" Dkt. No. 18 at 40 (citation omitted). This "simple talismanic reference to the 'foreign affairs' power of the President" is hardly sufficient to tip the balance of equities in Defendants' favor. *See Zweibon v. Mitchell*, 516 F.2d 594, 699 (D.C. Cir. 1975) (en banc) (Wilkey, J., concurring and dissenting). Defendants' supposed concern about international relations is also difficult to reconcile with their dismissiveness toward the Uzbekistan ambassador's understanding of the purpose of the gazebos. *See* Dkt. No. 18 at 19 n.2. And Defendants do not explain what foreign policy considerations make it essential to site the gazebos in West Potomac Park. Plaintiffs' requested relief would not prevent Defendants from pursuing their purported foreign policy objectives by displaying the gazebos elsewhere—which they claim they might do in five months anyway. *See* Griess Decl. ¶ 26.

Finally, Defendants insist that the gazebos and related construction have not displaced recreational activity in West Potomac Park because the area in question was previously fenced off. Dkt. No. 18 at 41–42. But they do not refute any of Plaintiffs' assertions about the area where the work is taking place: it was previously fenced off for seawall restoration work; the seawall project concluded several months ago; and the Park Service stated that reopening of the area was expected shortly after the cherry blossom festival in April 2026. Stierli Decl. ¶ 43; *see* Griess Decl. ¶¶ 15–18. Despite the Park Service's statement, the area has remained inaccessible. Dr. Griess does not explain why the area has not reopened or whether or when it will, stating

vaguely that the contractor charged with remediation "is expected to continue restoration work through the month of October" and that the fence will remain "until the restoration work is complete." Griess Decl. ¶ 19. And he acknowledges that additional "[t]emporary fencing has been erected to enclose the site" of one of the gazebos. *Id.* ¶ 25. Accordingly, it is clear that the ongoing construction activity interferes with recreational use of the park and that the interference will only worsen if construction is allowed to proceed.

## CONCLUSION

The Court should grant Plaintiffs' motion for preliminary injunction or 5 U.S.C. § 705 stay and deny Defendants' motion to dismiss.

Date: October 13, 2026

Respectfully submitted,

*/s/ Michael J. Torcello*
Michael J. Torcello (DC Bar No. 90014480)
Alethea Anne Swift (DC Bar No. 1644929)
Catherine M.A. Carroll (DC Bar No. 497890)
Robin F. Thurston (DC Bar No. 1531399)
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
Phone: (202) 448-9090
Fax: (202) 796-4426
mtorcello@democracyforward.org
aswift@democracyforward.org
ccarroll@democracyforward.org
rthurston@democracyforward.org

*Counsel for Plaintiffs*